NO. 07-06-0027-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D


 

JANUARY 31, 2007


______________________________



RUBEN SILVA CASTILLO, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;



NO. 2793; HONORABLE GORDON H. GREEN, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

OPINION


 Ruben Silva Castillo appeals his conviction for possession of a controlled substance
in a correctional facility. He assigns error to the trial court's failure to provide a jury
instruction on voluntary conduct and questions the sufficiency of the evidence supporting
his conviction. We affirm.

 Most of the relevant facts are undisputed. Appellant went to the Parmer County Jail
to visit an inmate. On entering the public area of the jail he presented identification to the
dispatcher who processes visitation requests by, inter alia, checking the visitor's name
against a list of visitors for the requested inmate and checking for warrants. When the
dispatcher discovered appellant had an outstanding warrant issued in another county, the
dispatcher called the sergeant in charge of the jail for assistance. The sergeant confirmed
appellant was the person named in the warrant and informed appellant he would be
detained in the jail. During a later inventory of appellant's property in the booking area of
the jail, the sergeant and a correctional officer found two small clear plastic bags containing
methamphetamine in a small coin purse appellant was carrying, resulting in the present
prosecution.

 Appellant was charged in an indictment alleging he "intentionally or knowingly
possess[ed] a controlled substance, namely, methamphetamine, while in a correctional
facility, to-wit: the Parmer County jail." He was found guilty by a jury and sentenced to two
years confinement and a $10,000 fine. 

 Penal Code Section 38.11(d)(1)(B) provides a person commits an offense by
possessing a controlled substance while "in a correctional facility or a secure correctional
facility[.]" Tex. Pen. Code Ann. § 38.11(d)(1(B) (Vernon Supp. 2006). The Penal Code
defines both terms to include a county jail. Tex. Pen. Code Ann. § 1.07(a)(14)(A), (45)(A)
(Vernon Supp. 2006). 

 We begin with appellant's second and third issues, by which he challenges the legal
and factual sufficiency of the evidence he intentionally or knowingly possessed
methamphetamine in the jail. In a legal sufficiency review, an appellate court must assess
all the evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could find the essential elements of the crime beyond a reasonable doubt. 
Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005), citing Jackson v. Virginia,
443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When conducting a factual
sufficiency review, we review the evidence in a neutral light. Zuniga v. State, 144 S.W.3d
477, 484 (Tex.Crim.App. 2004). However, we must be deferential to the jury's findings and
resist intruding on the fact finder's role as the sole judge of the weight and credibility of the
evidence. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000).

 Each of appellant's three issues rest on his position the evidence "indicated that [he]
was arrested on a warrant outside the jail facility and brought forcibly into the jail by
deputies." Based on this characterization of the evidence, appellant argues his presence
in the jail was not voluntary, thus his possession of a controlled substance there also was
not voluntary. We cannot agree with appellant's characterization of the evidence. If, by
"outside the jail facility," appellant means outside the building, we disagree with his reading
of the record. No witness testified that appellant left the building between the time he
presented himself at the dispatcher's window seeking to visit and his arrest. If, by that
phrase, appellant is contending that the lobby or visitation areas of the building are not
parts of the jail or correctional facility for purposes of Penal Code Section 38.11(d)(1)(B),
we again disagree.

 Testimony given by the Parmer County sheriff included his description of the jail. 
He indicated the jail is located adjacent to, and about 100 yards north of, the Parmer
County courthouse. He later agreed the jail is "brand new." Asked about "types of facilities
. . . at the jail" other than the jail cells, he testified, "Well, the jail encompasses the
administrative office in the front of the building. Of course, we have visitation areas for the
inmates. We also have where we store our evidence, where we have the various functions
surrounding the jail, their exercise areas and medical. Then we also have a large area on
the south end that we call a sally port, but that's a big garage area where we bring people
in and out and to secure our vehicles." The sheriff also responded positively to a question
asking whether the "building itself" is classified as a correctional facility. 

 Witnesses sometimes distinguished between the secured (1) areas of the building and
the front or lobby area. The sheriff said a visitor "would have to come in through the front
administrative area into the lobby, and that would be pretty much all you could get into
unless we let you in." The sergeant in charge of the jail testified he considered the
unsecured lobby area in the facility "part of the . . . administration for the sheriff's office."
He said the lobby "has two windows. You can actually go to the jail window or you can go
to the secretary's window." 

 Appellant points to instances in which the sheriff and the correctional officer referred
to appellant's having been brought "back into" the jail after deputies learned of the
outstanding warrant. In their contexts, we read the statements simply as additional
instances of testimony distinguishing between the "back" secured areas and the front
public or "administrative" area of the building. (2) The statements cannot reasonably be
viewed as indicating either witness considered appellant to have been outside the jail when
he was arrested. 

 The undisputed evidence established appellant was not under arrest when he
entered the jail for the purpose of visiting an inmate. There was no evidence this conduct
was involuntary. See Rogers v. State, 105 S.W.3d 630, 638 (Tex.Crim.App. 2003); Brown
v. State, 89 S.W.3d 630, 633 (Tex.Crim.App. 2002) (both discussing meaning of voluntary
under Penal Code Section 6.01(a)). Appellant's knowledge of the nature of the substance
may be inferred from his possession of it in the coin purse in his pocket, and from his
reaction to its discovery. (3) See Smith v. State, 56 S.W.3d 739, 746 (Tex.App.--Houston
[14th Dist.] 2001, pet. ref'd) (without admission by the accused, due to its subjective nature,
knowledge element of possession offense may be inferred from circumstantial evidence),
citing McGoldrick v. State, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985). On this evidence
a rational factfinder could have found the essential elements of the offense beyond a
reasonable doubt. See Poindexter, 153 S.W.3d at 405 (stating standard for reviewing legal
sufficiency of evidence).

 With respect to appellant's factual sufficiency challenge, he cites no evidence in the
record contrary to the jury's findings that the substance recovered from appellant was
methamphetamine, he knew the nature of that substance, or that he knew he was entering
a correctional facility when he initiated the visitation. The jury's verdict was not contrary
to the great weight and preponderance of the evidence. See Watson v. State, 204 S.W.3d
404, 417 (Tex.Crim.App. 2006). Appellant's second and third issues are overruled.

 By his first issue, appellant contends the trial court erred by failing to include in the
jury charge on guilt/innocence the definition of "voluntary possession" in accordance with 
Penal Code sections 6.01(a) and (b). (4) An instruction on the issue of voluntariness of a
defendant's conduct can be appropriate. See Rogers, 105 S.W.3d at 638; Brown, 89
S.W.3d at 633. But, as noted, we see no evidence any involuntary act was involved in
appellant's entry of the jail or his possession of the methamphetamine as he entered it. 
In Brown the Court of Criminal Appeals held the possession of a controlled substance by
a person brought to jail after his arrest did not prevent prosecution under section 38.11(b) (5)
on the basis his conduct was not voluntary. 89 S.W.3d at 633. The differences between
sections 38.11(b) and (d)(1)(B) do not distinguish the holding in Brown. Appellant points
out that in Brown the defendant was instructed to inform the deputy if he possessed any
contraband "before they stepped inside the jail." 89 S.W.3d at 632. No evidence shows
that appellant was deprived of the opportunity to leave the contraband he was carrying
elsewhere before he stepped inside the jail. We find the trial court did not err by failing to
include in the charge an instruction regarding the voluntariness of appellant's possession,
and overrule his first issue. 

 Having overruled appellant's issues, we affirm the trial court's judgment.

 


 James T. Campbell

 Justice




Do not publish.



1. Testimony also sometimes referred to "controlled" and "uncontrolled" areas.
2. The sheriff agreed officers "went out into the visiting area and brought [appellant]
back into the secured area." 
3. One officer testified that, after the methamphetamine was discovered, appellant
was "visibly shaken, a little upset about the situation."
4. Appellant acknowledges that no objection to the omission was raised at trial, so
if it were error, it would require reversal only if it caused appellant harm so egregious as
to deprive him of a fair trial. See Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App.
1984) (setting forth harm standard). 
5. Section 38.11(b) provides a person commits an offense if the person takes, inter
alia, a controlled substance "into a correctional facility." Tex. Pen. Code Ann. § 38.11(b) 
(Vernon 2003 & Supp. 2006).


ccent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-08-00308-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JULY
13, 2010

 



 

MARK ANTHONY TAYLOR, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 251ST DISTRICT COURT OF RANDALL
COUNTY;

 

NO. 16,410-C; HONORABLE ANA ESTEVEZ, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Mark Anthony Taylor,
appeals his conviction for the offense of aggravated assault with an
affirmative deadly weapon finding[1]
and sentence of nine years incarceration in the Institutional Division of the
Texas Department of Criminal Justice. 
Specifically, appellant challenges the trial courts affirmative finding
of a deadly weapon and requests reformation of the judgment to delete such
finding.  We affirm the judgment of the
trial court.

 

Background

            In
2004, appellant was indicted for the offense of aggravated assault.  The indictment alleged that appellant
intentionally and knowingly caused bodily injury to Micha
Dawn Tarver, by striking her with his fist, and that he used or exhibited a
deadly weapon in the commission of the offense, specifically referencing his
fist.  The indictment also included a
specific notice of the States intent to seek an affirmative finding of a deadly
weapon, which again identified appellants fist as the deadly weapon.

            Prior
to trial on the indicted offense, appellant and the State reached a plea
agreement.  As a result of and in
accordance with this plea agreement, appellant signed a judicial confession
that he committed the offense of aggravated assault exactly as charged in the
indictment, and the State recommended that appellant be placed on deferred
adjudication community supervision for a period of five years and fined $2,000.  The trial court admonished appellant and
placed appellant on deferred adjudication community supervision in accordance
with the plea agreement between appellant and the State.  Notably, no mention of any deadly weapon
finding was made during this plea hearing. 
No appeal was taken from this proceeding.

            In
2006, the State moved to proceed to an adjudication of guilt alleging that
appellant had violated the terms of his community supervision.  After a hearing on this motion, appellant was
continued on deferred adjudication community supervision, but the term of his
community supervision was modified and extended for two additional years.

            In
2008, the State again filed a motion to proceed to adjudication of guilt
alleging that appellant had violated the terms of his deferred adjudication
community supervision.  A hearing was
held on this motion.  During this
hearing, the trial court asked appellant if he was the same person that had
pled guilty to the offense of aggravated assault with a deadly weapon to which
appellant responded in the affirmative. 
Appellant pled true to the allegations contained in the motion to
proceed to adjudication.  The trial court
found that there was sufficient evidence of the alleged violations, adjudicated
appellant guilty of aggravated assault, made an affirmative deadly weapon
finding, and sentenced appellant to incarceration for a period of nine
years.  Appellant timely appealed from
this judgment.

            By
one issue, appellant contends that the trial court erred in making an
affirmative finding that appellant used or exhibited a deadly weapon when the
weapon alleged is not deadly per se,
and is neither mentioned in the written plea agreement nor in the trial courts
oral recitation of the terms of the plea agreement.

Analysis

            Appellant
contends that neither the written plea agreement nor the trial courts oral
recitation of the terms of that agreement referenced appellants use or
exhibition of a deadly weapon in committing the aggravated assault.  Therefore, according to appellant, his plea
agreement did not include the trial courts affirmative finding of a deadly
weapon.  Further, appellant contends that
the trial court must have ratified appellants construction of the agreement as
not including a deadly weapon finding when the trial courts oral recitation of
the terms of the agreement omitted any mention of a deadly weapon finding.

            A
plea bargain may limit a trial courts authority to enter a deadly weapon
finding.  This is so because, once a
trial court has accepted the plea agreement, the court has a ministerial,
mandatory, and non-discretionary duty to specifically enforce the terms of the
agreement.  Perkins
v. Court of Appeals for the Third Supreme Judicial Dist. of Tex., 738
S.W.2d 276, 285 (Tex.Crim.App. 1987).  In performing this duty, the courts primary
concern is to ascertain and give effect to the parties intentions as expressed
in the instrument.  Hatley v. State, 206
S.W.3d 710, 718 (Tex.App.Texarkana 2006, no pet.).  Reviewing courts will not disturb the terms
of [a plea] agreement by reading into it details not contemplated by the
parties as reflected in the agreement or raised by the evidence.  Ex parte Williams,
758 S.W.2d 785, 786 (Tex.Crim.App. 1988).

            In
the present case, the record reflects that the parties plea agreement did not
contemplate that an eventual adjudication of appellants guilt would foreclose
an affirmative finding of a deadly weapon. 
First, the indictment of appellant for the aggravated assault on Tarver
specifically alleged that he used a deadly weapon and, further, includes a
separate notice of the States intent to seek a deadly weapon finding.  Second, nothing in the plea agreement
indicates that the State intended to withdraw its request for a deadly weapon
finding.  Third, the judicial confession
appellant signed stated that he committed the offense exactly as charged in
the indictment.  Fourth, during the 2004
hearing, appellant testified that he had reviewed the indictment and had committed
each of the elements alleged in the indictment. 
Finally, during the 2008 hearing, appellant testified that he was the
same person that had pled guilty to the offense of aggravated assault with a
deadly weapon in November of 2004. 
Clearly, the record reflects that appellant was, from the outset, aware
that the State was seeking an affirmative finding of a deadly weapon in this
case and we will not read into the parties agreement a term that was not
addressed in the agreement and which all of the evidence indicates was not
intended to be affected by the agreement.

            Additionally,
even were we to find that the parties intended to foreclose an affirmative
deadly weapon finding in an eventual adjudication of appellants guilt, such a
term of the agreement would have been unenforceable.  Upon deciding to proceed to an adjudication
of guilt, the trial court is not bound by the terms of a prior plea bargain
agreement, even if the plea agreement contemplated limiting the sentence to be
assessed after adjudication.  Ex parte Huskins, 176 S.W.3d 818,
819 (Tex.Crim.App. 2005).  This is so because, once the trial court
proceeds to adjudication, it is restricted in the sentence it imposes only by
the relevant statutory limits.  Id.
(quoting Von Schounmacher v. State, 5 S.W.3d
221, 223 (Tex.Crim.App. 1999)).

            Consequently,
we overrule appellants sole appellate issue.

Conclusion

            For
the foregoing reasons, we overrule appellants issue and affirm the judgment of
the trial court.

                                                                                                Mackey K. Hancock

                                                                                                            Justice

Do not publish.         








 











[1] See Tex. Penal Code Ann. § 22.02(a) (Vernon Supp. 2009).