Curtis SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–00–00707–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2001.

Jay T. Karahan, Houston, for appellants.

Dan McCrory, Houston, for appellees.

Panel consists of Justices FOWLER, WITTIG, and DRAUGHN.*

## OPINION

FOWLER, Justice.

A jury found Curtis Smith, appellant, guilty of murder and assessed punishment at 45 years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant brings five points of error to this court. In his first point of error, appellant complains that the trial court erred in admitting extraneous offense evidence during the punishment phase. In his second through fifth points of error, appellant complains of the sufficiency of the evidence. We affirm.

### FACTUAL BACKGROUND

On May 17, 1999, George Robinson, the complainant, was murdered. He was found dead on a highway overpass at the intersection of Elgin and Highway 288 in Harris County. The complainant's death was caused by a gunshot wound to the back, which severed his aorta and perforated his lung. However, the complainant also had a deep cut on his head which he received from being struck with an iron stick. Several witnesses testified at trial to the events leading up to the complainant's death.

Mattie Adams lives in an apartment adjacent to appellant's residence. According to Adams, appellant lived with Kenny Brownfield, who was known as "Pappa Squallie." Appellant is also known as "Boo." Adams testified that she heard commotion coming from appellant's residence and observed a scuffle. Adams heard a couple of gunshots, but testified that no one was hit. She said that Fred, another resident of Pappa Squallie's apartment, shot the gun. Adams testified that when the gunshot sounded, appellant continued chasing the complainant, but the others ended their pursuit. Appellant rounded the corner carrying a stick.

Before the gunshot sounded, another witness, Lea Collins, who also lives in the area, observed appellant hitting the complainant with an "iron stick." Collins testified that Fred was beating the complainant with a gun. Once the shots were fired, appellant chased after the complainant.

There is inconsistency as to whether appellant took the gun from Fred when he first chased the complainant, or if he went back for the gun. In any event, the testimony is clear that appellant took the gun from Fred and pursued the complainant. After appellant was out of sight, Collins heard another gunshot.

Katrina Vespe testified that on May 17, 1999, she was stopped at a traffic light on the overpass of the Elgin–288 intersection. This is about three blocks away from Adams' and Collins's homes. Vespe noticed appellant and another man standing on the overpass. She thought that they were talking to one-another. Vespe glanced back at the traffic light. At that

* Senior Justice Joe L. Draughn sitting by as-    signment.

moment, she heard 3 gunshots. She turned her head and looked back at the men. Appellant then ran past Vespe's car, and the complainant fell down with blood coming out of his head. She got a good look at appellant as he passed by her car. She testified he was wearing khaki shorts with black windpants over them. She could see the shorts under his windpants, because the pants were pulled down low. Vespe testified that appellant was running awkwardly, and had his hands in his shorts as if he were hiding something. Vespe watched appellant run down the street, then she flagged down a police officer.

Officer Caesar Rivera began searching the neighborhood for the suspect. He saw Pappa Squallie outside, near the street. Rivera gave Pappa Squallie a description of the suspect. After they spoke, Pappa Squallie went back into his home. About 10–25 minutes later, Officer Rivera saw Pappa Squallie take a trash bag and put it in a City of Houston trash can in front of his apartment. Officer Rivera watched the trash can to make sure it was not thereafter tampered with until a police officer could inspect it.

Officer C.E. Elliott arrived on the scene shortly and retrieved the bag out of the trash can. The bag contained a pair of khaki shorts with blood on them. The officers also retrieved an R.G.—31 five-shot revolver. A firearms expert testified at trial that the bullet recovered from the complainant's body was fired from that gun. In the pocket of the khaki pants the officers recovered a plastic bag containing a pill bottle holding some crack cocaine.

Officer Elliott met with appellant the day after the murder. Appellant provided a tape-recorded statement about the offense. He described fighting someone from the apartments to Elgin, and admitted pointing the gun and pulling the trigger.

## DISCUSSION AND HOLDINGS

### I.  SUFFICIENCY OF THE EVIDENCE

In four points of error, appellant complains that the evidence was legally and factually insufficient to support his conviction for murder either as a principal or a party. In short, appellant contends that there was insufficient evidence that he shot the complainant and there was insufficient evidence that he intended to kill the complainant. For the reasons set out below, we disagree.

When both legal and factual sufficiency points of error are raised, this Court must first examine the legal sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996). When reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex. Crim.App.1993). This same standard of review applies to cases involving both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995). On appeal, we do not reevaluate the weight and credibility of the evidence, but rather, we consider only whether the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993).

When conducting a factual sufficiency review, we do not view the evidence in the light most favorable to the verdict, and we set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d at 129. To do this, "[t]he court reviews the evidence

weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Since the State bears the burden of proving each element of a criminal offense at trial, an appellant may challenge the sufficiency of the evidence used to establish an element of the offense by claiming that evidence supporting the adverse finding is "so weak as to be factually insufficient." *Id.* at 11. We are mindful, however, that we must give appropriate deference to the fact finder so as not to supplant the fact finder's function as the exclusive judge of the weight and credibility given to witness testimony. *Id.* at 7.

### A. Legal Sufficiency

#### 1. Whether Appellant Caused the Complainant's Death

In his second point of error, appellant claims that the evidence was legally insufficient to show that he caused the complainant's death.

■ Unquestionably, the State must prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex.Crim.App.1984); *Rice v. State*, 801 S.W.2d 16, 17 (Tex.App.—Fort Worth 1990, pet. ref'd). Identity may be proved through direct or circumstantial evidence, and through inferences. *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir.1981); *Earls v. State*, 707 S.W.2d 82, 85 (Tex.Crim.App.1986); *Roberson v. State*, 16 S.W.3d 156, 157 (Tex.App.—Austin 2000, pet. ref'd); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex.App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex.App.—El Paso 1986, no pet.). Proof of the accused's identity through circumstantial evidence is not subject to a more rigorous standard than is proof by direct evidence, as both are equally probative. *McGee v. State*, 774 S.W.2d 229, 238 (Tex.Crim.App.1989).

■ Here, the evidence that appellant caused the death of the complainant is legally sufficient. Witnesses testified that appellant beat the complainant with a pipe and chased him with a gun. When appellant was on the overpass with the complainant, Katrina Vespe saw them. When she was looking away from the two men, she heard three shots. She looked back and saw the complainant fall to his death while appellant ran away. When appellant returned to his apartment, Mattie Adams heard Fred ask, "Did you get him, Boo?" Appellant replied, "Yes, I got the son of a bitch." In addition, the gun found in the trash can outside of appellant's apartment was the gun used in the murder. In the same trash can, police officers found the khaki shorts appellant had been wearing at the time of the murder. Furthermore, in his tape recorded statement, appellant admitted to fighting with the complainant, and admitted to pointing the gun and pulling the trigger.

Appellant suggests that Fred may have killed the complainant because some of the witnesses saw Fred beat the complainant and fire the gun. However, the evidence shows that Fred fired the gun near the apartments and failed to hit anyone. Only appellant pursued the complainant with the gun, and shot him on the Elgin 288 overpass. Furthermore, the cause of death was determined to be a gunshot wound, not a pistol-whipping.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant caused the complainant's death. Appellant's second point of error is overruled.

### 2. Whether Appellant Intended to Murder the Complainant

In his fourth point of error, appellant contends that the evidence is legally insufficient to support appellant's conviction for murder under the law of parties because the evidence failed to show he intended to kill the complainant.

■■■ The State must prove that appellant had intent to kill beyond a reasonable doubt. Proof of a mental state, such as intent, must almost always be proved by circumstantial evidence. *Sadler v. State*, 728 S.W.2d 829, 831 (Tex.App.—Dallas 1987, no pet.). The jury, who is exclusively empowered to determine the issue of intent, may infer intent to kill from the use of a deadly weapon. *Mercado v. State*, 718 S.W.2d 291, 295 (Tex.Crim.App.1986). A pistol is a deadly weapon, and when used by a defendant, an intent to kill is presumed. *Williams v. State*, 567 S.W.2d 507, 509 (Tex.Crim.App.1978).

■■■ The evidence establishes that appellant killed the complainant with an R.G.–31, five-shot revolver—a deadly weapon. His intent to kill is presumed. Appellant failed to rebut this evidence at trial. In fact, other evidence supports the determination that appellant intended to kill the complainant: he beat the complainant with an iron pipe, he chased the complainant down with a gun, he shot the complainant, and he stated "I got the son of a bitch."

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant intended to kill the complainant. Appellant's fourth point of error is overruled.

### B. Factual Sufficiency

#### 1. Whether Appellant Caused the Complainant's Death

■■■ Appellant also complains that the record fails to show that appellant fired the shots which caused the complainant's death. He suggests that because Fred fired some shots, Fred must have fired the fatal shot.

Reviewing the evidence with appropriate deference to the jury's verdict, we find that the evidence is not so weak as to be factually insufficient. We have reviewed the entire record. While there is evidence that Fred fired two shots, there is also evidence that neither of those shots hit the complainant. The complainant's death occurred on the bridge, where a witness heard three shots fired, and then saw the complainant collapse. There is evidence that Fred was not on that bridge.

After comparing the evidence that proves appellant caused the complainant's death to the evidence that disproves it, we hold that this evidence was factually sufficient to support the jury's verdict. Accordingly, point of error three is overruled.

#### 2. Whether Appellant Intended to Murder the Complainant

■■■ In his fifth point of error, appellant contends that the evidence was factually insufficient to support his conviction for murder under the law of parties because the State failed to prove that appellant intended for the complainant to die.

Reviewing the evidence with appropriate deference to the jury's verdict, we find that the evidence is not so weak as to be factually insufficient. We have reviewed the entire record. Appellant used a deadly weapon to cause the complainant's death. From that, appellant's intent to kill the complainant may be inferred. After comparing the evidence that proves that

appellant caused the complainant's death to the evidence that disproves it, we hold that this evidence was factually sufficient to support the jury's verdict. Accordingly, point of error five is overruled.

## II. EXTRANEOUS OFFENSE EVIDENCE

In the sentencing phase of trial, the court, over appellant's objection, admitted into evidence the crack cocaine found in appellant's shorts that the officers found in a trash bag outside of appellant's residence. Appellant complains that the evidence was insufficient to link him to this extraneous offense, because assuming that these were appellant's pants, they were last seen under the care, custody, and control of Pappa Squallie, not appellant, and the record does not show what role, if any, appellant played in the pants being thrown away. Appellant also points out that the State admitted, while trying to introduce this evidence, that "this is not the greatest dope case I've ever seen. The links are not that strong. . . . [But t]he fact that the links are weak does not preclude the admission of this evidence."

By this point of error, appellant complains of the trial court's threshold determination of the admissibility of this evidence.[1] It is the trial court's responsibility to make this threshold determination

of admissibility. *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App.1996). In its threshold determination, the court must determine whether a jury could reasonably find, beyond a reasonable doubt, that the defendant committed this extraneous offense. *Harrell v. State*, 884 S.W.2d 154, 160 (Tex.Crim.App.1994).

The Texas Penal Code defines possession as a voluntary act if the possessor had knowledge or control over an object long enough to enable him to terminate control over it. Tex. Pen.Code Ann. § 6.01(b) (Vernon 1994). To prove possession of a controlled substance beyond a reasonable doubt, the State must prove that the defendant knowingly exercised actual care, custody, control, or management over the contraband. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985); *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The elements of possession may be proved by circumstantial evidence. *Williams v. State*, 859 S.W.2d 99, 101 (Tex.App.— Houston [1st Dist.] 1993, pet. ref'd). Without an admission by the accused, due to its subjective nature, the knowledge element of the crime may be inferred. *McGoldrick*, 682 S.W.2d at 578; *Grant*, 989 S.W.2d at 433.

1. While appellant did not complain of jury charge error in this appeal, we note that nothing in the jury charge on punishment deals with this extraneous offense evidence. The law in Texas is well settled on this point: the fact-finder may not use extraneous offense evidence in assessing punishment unless the fact-finder is satisfied beyond a reasonable doubt that the extraneous offense is attributable to the defendant. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex.Crim.App.2000). Under article 37.07 section 3(a) of the Texas Code of Criminal Procedure, in a non-capital case, an instruction that extraneous offense evidence cannot be considered unless the fact-finder is satisfied beyond a reasonable doubt

that the extraneous offense is attributable to the defendant is law applicable to the case, and the jury must be so instructed, even in the absence of the defendant's request for such an instruction. *Id.* The trial court admitted extraneous offense evidence in the punishment phase, and should have given an instruction under article 37.07 section 3(a) of the Code of Criminal Procedure to the jury. *Id.* The record reveals that no section 3(a) instruction was given. This issue may be raised for the first time on appeal. However, appellant did not raise this issue on appeal, and we find no authority to require us to consider it sua sponte.

"[W]hen the contraband is not found on the accused's person, or is not in the exclusive possession of the accused, additional facts must affirmatively link the accused to the contraband" so that one may reasonably infer that the defendant knew of the contraband's existence and exercised control over it. *Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.—Texarkana 1998, pet. ref'd). While the defendant must be affirmatively linked to the cocaine, the link does not have to be so strong so as to negate every other reasonable hypothesis other than the defendant's guilt. *Brown v. State*, 911 S.W.2d 744, 745–49 (Tex.Crim.App.1995). Affirmative links may be established by facts and circumstances that indicate the accused's knowledge of and control over the contraband. *Grant*, 989 S.W.2d at 433. Included among these factors are the quantity of the contraband, whether defendant owned or had a right to possess the place where the drugs were found, and whether the place where the drugs were found was enclosed. *Pettigrew v. State*, 908 S.W.2d 563, 571 (Tex.App.—Fort Worth 1995, pet. ref'd); *Gabriel v. State*, 842 S.W.2d 328, 331 (Tex.App.—Dallas 1992) *aff'd* 900 S.W.2d 721.

The gun that appellant used in the murder, and the blood-stained shorts that a witness saw him wearing, were found in the trash can. Inside a pocket of the shorts, the police found crack cocaine. Before the police took the shorts out of the trash can, Pappa Squallie was the last one to touch the shorts. However, it appears that a rather short amount of time elapsed between (1) the time that appellant apparently put the shorts in the bag, or gave the shorts to Pappa Squallie to put in the bag, and (2) the time they were put in the trash can. Moreover, shortly before this, a police officer visited with Pappa Squallie and told him the police were looking for a suspect (whom Pappa Squallie knew to be his roommate). It is logical to conclude that Pappa Squallie was trying to hide the evidence of the murder—the shorts and the gun. Furthermore, it also is logical that, if he had narcotics that he wanted to dispose of, he would simply put them in the trash bag and not take the extra time to put them in the pocket of the shorts. If he did not intend for the bag to be found, which is logical, since he would be implicated if it were found, he would not need to put the narcotics in the pocket. Finally, if he was in a rush, which it appears he was, this also supports the conclusion that he did not take extra time to put narcotics in the shorts pocket. It seems reasonable then, that the narcotics were already in the shorts and were forgotten in the rush of events. We are of the opinion that a reasonable jury could conclude beyond a reasonable doubt that the narcotics were appellant's. As a result, we hold that the trial court did not abuse its discretion in determining that the cocaine found in the shorts met the threshold requirements for admissibility. We therefore overrule appellant's first point of error.

## CONCLUSION

We hold that the evidence was legally and factually sufficient to support appellant's conviction as a principal and as a party to the murder of the complainant. We also hold that the trial court did not err during the punishment phase in admitting the cocaine found in appellant's shorts as extraneous offense evidence. Accordingly, we overrule all five of appellant's points of error.

Having overruled these points of error, we affirm the judgment of the trial court.