Affirmed and Memorandum Opinion filed February 26, 2008








Affirmed and Memorandum Opinion filed February 26, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-01012-CR

_______________

 

JOSE MARCOS TIJERINO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 1052607

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

A jury
found appellant, Jose Marcos Tijerino, guilty of murder.  The trial court
assessed a sentence of forty years= confinement.  In two issues,
appellant contends the evidence is legally and factually insufficient to
support his conviction.  All dispositive issues are clearly settled in law. 
Accordingly, we issue this memorandum opinion and affirm.  See Tex. R.
App. P. 47.4.

 

 








I. Background

Shortly
after 2:00 a.m. on February 29, 2004, complainant, Safari Gholamreza, was
murdered following an argument in the off-site parking lot of the T-Town bar in
Houston, Texas.  He died as a result of five gunshot wounds to the chest and
back that perforated his heart and lungs.

Anovar
Seljouki, Felisa Hernandez, Mark Losaya, and Jason Losaya testified at trial. 
Each observed various aspects of the shooting, although none of them could
conclusively identify the gunman.  After the shooting, the eyewitnesses saw the
gunman flee in a red Mercury Cougar or Ford Thunderbird.[1] 
Although differing on certain details, the witnesses described the gunman as a
Hispanic male  with a  similar complexion and build as appellant.  Hernandez
testified that the gunman wore a white button-down shirt with rolled-up sleeves
and black Dockers, similar to a waiter=s clothing.[2]








Houston
police investigated the murder.  They discovered complainant=s body next to a Lincoln Town Car. 
Officer Frank Martinez processed the Town Car.  He noted the front driver=s side window had been broken, there
were pry marks and other damage to the door frame and weather stripping, and
the alarm sounded when he opened the door.  Additionally, he discovered blood
on the broken driver=s side window and the glove compartment door.  Forensic
analysts at the Identigene lab, a private forensic laboratory in Houston,
concluded that appellant=s DNA matched the blood found on the Town Car.  On March 10
and 11, 2004, ten days after the murder, Sergeant Darryl Robertson attempted to
meet appellant at the Cabo restaurant, where appellant was employed.  However,
appellant was not at the restaurant either day, having failed to report for his
scheduled work-shifts.  In the course of his investigation, Sergeant Robertson
discovered appellant owned a red Mercury Cougar and eventually located the car
in front of appellant=s house.

Irene
Gonzalez, appellant=s cousin by marriage, also testified at trial.  In the early
morning of February 29, 2004, the night of complainant=s murder, appellant went to her house
and asked her to drive him home.  He complained that his car was not running
properly.  When Gonzalez inquired regarding appellant=s bloody appearance, he explained
that he had been in a fight.  Gonzalez allowed appellant to borrow her truck
and agreed to take his car to the mechanic.  Later that week, appellant asked
her to obtain an estimate of the cost to paint the car green.

Charlotte
Rodriguez, appellant=s ex-girlfriend, was appellant=s alibi witness.  She testified that
in February of 2004, she and appellant visited the T-Town bar a number of
times.  She recalled that, on one occasion, after a T-Town employee asked
appellant to leave, appellant punched his fist through the window of a car in
the parking lot and suffered a cut to his hand.  According to Rodriguez, after
appellant cut himself, they exited the T-Town parking lot in a blue Ford Monte
Carlo.  They were accompanied by a third individual who rode with them to
another bar where they stayed until after 2:00 a.m.  She also testified that
appellant did not participate in an argument or fight in the T-Town parking lot
that night, and he did not shoot anyone.  

II. Legal Sufficiency

In his
first issue, appellant contends the evidence is legally insufficient to support
his conviction for murder because the State failed to prove the gunman=s identity beyond a reasonable
doubt.  We disagree.








            A person is
guilty of murder if he (1) intentionally or knowingly causes the death of
another, or (2) intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of an individual.  See
Tex. Pen. Code Ann. ' 19.02 (Vernon 2003).

            In evaluating
legal sufficiency, we view the evidence in the light most favorable to the
verdict and determine whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Salinas v. State, 163 S.W.3d
734, 737 (Tex. Crim. App. 2005).  The jury  is the sole judge of the
credibility of witnesses and is free to believe or disbelieve all or part of a
witness=s testimony.  Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  We ensure only that the jury
reached a rational decision and do not re-evaluate the weight and credibility
of testimony.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993). 

The
State must prove beyond a reasonable doubt that the accused is the person who
committed the crime charged.  Smith v. State, 56 S.W.3d 739, 744 (Tex.
App.CHouston [14th Dist.] 2001 pet. ref=d).  Identity may be proved with
direct or circumstantial evidence. Id.  Proof of the accused=s identity though circumstantial
evidence is not subject to a more rigorous standard than is proof by direct evidence. 
Id. (citing McGee v. State, 744 S.W.2d 229, 238 (Tex. Crim. App.
1989)).  In evaluating sufficiency of evidence, we may not focus on a part of
the evidence in isolation, but must consider all the evidence in order to
recognize the significance of any single piece.  See Clayton v. State,
235 S.W.3d 772, 779 (Tex. Crim. App. 2007). 

Appellant
contends the evidence is legally insufficient because (1) the State=s witnesses were not credible, (2)
the State=s physical evidence did not connect him to complainant=s murder, and (3) the State=s evidence of appellant=s guilty mind amounts to only a
suspicion of guilt.  However, after considering the combined and cumulative
force of the evidence, we conclude there is legally sufficient evidence to
sustain appellant=s conviction.








A.        Witness
Testimony

Appellant
first contends the jury could not have found him guilty beyond a reasonable
doubt because the witnesses provided varying descriptions of the gunman, the
events surrounding the shooting, and the gunman=s vehicle.  In addition, appellant
argues that his alibi witness was not rebutted or effectively impeached.  We
disagree

1.         Description
of the Gunman








Although
none of the eyewitnesses could identify appellant, their descriptions of the
gunman=s physical appearance and clothing
were consistent with appellant=s appearance and the clothing typically worn by a person in
his employment.  Felisa Hernandez, the only witness who observed the actual
shooting, testified that the gunman was a male who appeared to be Hispanic,
bald, light  complected, medium height, stocky, and of similar build to
appellant.  She testified that the gunman was dressed like a waiter, in black
Docker pants and a white button-down shirt with the sleeves rolled-up. 
Sergeant Robertson testified appellant was employed at the Cabo restaurant.  Although
differing in the exact details of dress and hair style, Anovar Seljouki, Mark
Losaya, and Jason Losaya=s descriptions generally corroborated Hernandez=s more detailed description.  Anovar
Seljouki observed a man with a gun, whom he believed was Hispanic, flee the
scene of complainant=s murder.  Mark and Jason Losaya saw a man with light
complexion, short hair, and a medium build, flee the scene.  Mark said the
gunman wore a white t-shirt, while Jason thought the gunman was wearing a red
or white t-shirt.  Jason also thought the gunman was likely Hispanic.  The jury
is free to believe one witness and disbelieve another, or believe a portion of
a witness=s testimony while disbelieving another portion.  See Jones, 984
S.W.2d at 257.  The jury could have believed the consistent portions of the
eyewitnesses= testimony while disbelieving incongruous portions.  Although various
descriptions of the gunman do not necessarily militate to the conclusion that
appellant was the gunman, the witnesses described a gunman who was similar to
appellant in complexion, build, and likely clothing.  These descriptions
support the jury=s verdict.

2.         The
Gunman=s Vehicle

Appellant
further contends the eyewitnesses= testimony regarding the gunman=s vehicle did not establish that they
actually observed appellant=s vehicle.  Appellant notes the witnesses presented varying
descriptions of the fleeing vehicle. He argues that his vehicle was equipped
with a spoiler that the eyewitnesses would have described if they had seen his
vehicle.  Notwithstanding appellant=s contentions, the jury could have
concluded the eyewitnesses observed appellant=s vehicle fleeing the scene.  All
four eyewitnesses described the gunman=s vehicle as a red or maroon Mercury
Cougar.[3]  Sergeant
Robertson testified that appellant owned a red Mercury Cougar and that he
discovered appellant=s Cougar outside of appellant=s house.  Additionally, Irene
Gonzalez and Charlotte Rodriguez testified that appellant drove a red or
burgundy Mercury Cougar.  Photographs of appellant=s vehicle were introduced into
evidence.  There was no inconsistency in the eyewitnesses= description of the gunman=s vehicle.  Therefore, the jury could
have concluded that the witnesses observed appellant=s vehicle fleeing the scene of
complainant=s murder, despite the fact that witnesses did not specifically describe a
spoiler on his vehicle.[4]

 

 








            3.         Alibi
Witness

Appellant
further contends the evidence is legally insufficient because the State did not
rebut or effectively impeach his alibi witness.  He argues Charlotte Rodriguez=s testimony provided an alternative
reason for the presence of appellant=s blood at the crime scene and
established appellant=s presence at another location when complainant was
murdered.  

Rodriguez
testified that during February 2004, she accompanied appellant to the T-Town
bar a number of times.  She recalled one incident when appellant was asked to
leave the bar.  As they walked toward their car, appellant punched and broke
the window of another car in the parking lot, cutting his hand.  They left in a
blue Ford Monte Carlo and drove to another bar, where they stayed until after
2:00 a.m.  She never observed appellant argue with, or shoot, anybody in the
T-Town parking lot that night.  However, Rodriguez could not remember the exact
date of this incidentConly that it occurred during February 2004.  Additionally,
although Rodriguez might have explained why appellant=s blood was on the broken car window,
she failed to explain the presence of appellant=s blood on the glove compartment door
of the Town Car.  The jury was in the best position to assess the credibility
and demeanor of the witnesses, and the jury was free to disbelieve appellant=s exculpatory explanations.  See
Jones, 984 S.W.2d at 257.  

B         Physical
Evidence

Appellant
further contends (1) the State never found or offered the murder weapon, and
the handgun he possessed at the time of his arrest was not the murder weapon,
and (2) the State offered no physical evidence connecting him to complainant=s murder.

1.         Murder
Weapon








Appellant
first argues the State failed to prove the identity of the gunman beyond a
reasonable doubt because the State neither recovered nor produced the murder
weapon at trial.  Additionally, appellant notes the gun he possessed when he
was arrested could not have been the murder weapon.  However, the State need
not offer a murder weapon into evidence to establish the essential elements of
murder.  Tex. Pen. Code Ann. ' 19.02; See Morales v. State, 633 S.W.2d 866, 868
(Tex. Crim. App. 1982); see also Victor v. State, 874 S.W.2d 748, 751
(Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) (holding it is not necessary for
the State to introduce a weapon into evidence to meet its burden of proof
regarding a charge of aggravated robbery).  The jury could have found the
essential elements of murder despite the State=s failure to produce the murder
weapon.

2.         Physical
Evidence Connecting Appellant and Complainant 

Appellant
further argues that the State failed to establish the essential elements of
murder because it offered no physical evidence connecting appellant with
complainant.  Specifically, he contends that the State presented no blood, DNA,
or forensic evidence connecting him with complainant, and the presence of his
blood on the broken glass and glove compartment of the Town Car next to complainant=s body was insufficient to connect
him with the murder.








Although
the presence of appellant=s blood on the broken glass and glove compartment door of the
Town Car does not prove the ultimate fact at issue in this caseBthat appellant murdered complainantBwe cannot consider evidence in
isolation.  See Clayton, 235 S.W.3d at 779.  Seljouki testified that he
observed two men in the T-Town bar parking lot arguing next to a Cadillac
immediately before complainant was murdered.  Sergeant Robertson testified that
complainant=s body was discovered next to a Lincoln Town Car, the only car near
complainant=s body that bore a resemblance to a Cadillac.  Additionally, the
eyewitnesses observed the gunman flee in a red Mercury Cougar, the same color
and model of vehicle as owned by appellant.  Taken together with the other
evidence presented at trial, the presence of appellant=s blood on a car next to complainant=s body supports an inference that
appellant was at the scene when complainant was murdered, and thus supports the
jury=s verdict. 

Additionally,
appellant argues the State presented no evidence of temporal proximity between
the breaking of the Town Car=s glass and complainant=s murder.  Appellant notes that the
Town Car=s alarm sounded when the police
opened the driver=s door, and none of the witnesses testified that they heard
the sound of breaking glass or the alarm prior to the gunshots.

Appellant=s argument rests on the supposition
that his burglary of the Town Car occurred some time before complainant=s murder, and therefore the
eyewitness descriptions connecting him to the murder were not credible. 
However, as stated above, the jury is charged with determining the credibility
of witnesses.  Jones, 984 S.W.2d at 257. The witnesses failure to hear
glass breaking or a car alarm does not necessarily discredit their testimony. 
Considering the evidence in the light most favorable to the verdict, the jury
could have concluded that the witnesses did not hear the sound of breaking
glass as it occurred, and that the car=s alarm failed to sound when the
window was broken.  Through its guilty verdict, the jury must have concluded
that the State=s witnesses were credible.

C.        Circumstantial
Evidence of Guilty Mind

Finally,
appellant contends the State=s circumstantial evidence of his guilty mind amounts to only
a suspicion of guilt, and thus is insufficient to support his conviction.  








To
provide additional support for its charge that appellant murdered complainant,
the State presented evidence that purportedly demonstrated appellant=s guilty mind.  Irene Gonzalez
testified appellant arrived at her house on the morning of February 29, 2004,
the night of complainant=s murder, and left his Mercury Cougar with her after
borrowing her truck.  He asked her to have the passenger door of his Cougar
repaired and to obtain an estimate for repainting his car green.  To explain
his bloody appearance, appellant told Gonzalez he had participated in a fight
earlier in the night.  To show appellant attempted to avoid the places he would
likely be found after the murder, the State introduced evidence that appellant
failed to report for his scheduled work shifts at the Cabo restaurant on the
two days the police attempted to locate him there.  In addition, to account for
the lack of forensic evidence in appellant=s vehicle, Sergeant Robertson
testified that the vehicle=s carpeting had been removed.  However, Sergeant Robertson
noted that the removal of the carpeting was not inherently suspicious because
the vehicle=s door was damaged which could allow water to leak into the vehicle.  

Appellant
argues these facts do not conclusively prove he committed complainant=s murder and instead amount to only a
suspicion of guilt.  However,  we cannot consider these facts in isolation.  See
Clayton, 235 S.W.3d at 779.  Taken together with the other evidence
presented at trial, and considered in the light most favorable to the verdict,
these facts support the contention that appellant attempted to hide his
connection to complainant=s murder.

D.        Conclusion

A
rational trier of fact could have found beyond a reasonable doubt that
appellant intentionally or knowingly caused the death of complainant, or that
appellant intended to cause serious bodily injury and committed an act clearly
dangerous to human life that caused the death of complainant.  Appellant=s first issue is overruled.

III. Factual Sufficiency








In his
second issue, appellant claims that the evidence is factually insufficient to
support his conviction for murder.  To determine factual sufficiency, we
view all the evidence in a neutral light and will set aside the verdict only to
prevent manifest injustice.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006).  In conducting a factual-sufficiency review, we engage in a
two prong test to determine whether there is some objective basis to find: (1)
that the evidence in support of the jury=s verdict, although legally
sufficient, is nevertheless so weak that the jury=s verdict seems clearly wrong and
unjust; and (2) in considering conflicting evidence, the jury=s verdict, although legally
sufficient, is nevertheless against the great weight and preponderance of the
evidence.  Id. at 417.  

To
support his factual-sufficiency challenge, appellant argues: (1) none of the
witnesses identified appellant as the gunman; (2) no forensic evidence linked
appellant to complainant=s murder or complainant himself; (3) the State presented no
motive for appellant to murder complainant; (4) the State did not recover or
present the murder weapon to the jury; (5) the State presented no evidence that
appellant had, or fired, a gun at the murder scene, and the gun in appellant=s possession at the time of his
arrest was not the murder weapon; and (6) the State did not rebut or
effectively impeach his alibi witness.  Keeping in mind that we may not look to
any piece of evidence in isolation, but must consider all evidence in order to
recognize the significance of any single piece of evidence, we will examine
each of appellant=s contentions in turn.  See Clayton, 235 S.W.3d at
779.

A.        Eyewitness
Accounts

Appellant
first argues that the evidence is factually insufficient to support the jury=s verdict because none of the
eyewitnesses could conclusively identify appellant as the gunman.  However,
although none of the eyewitnesses could positively identify the gunman, the
physical descriptions each witness provided were consistent with appellant=s physical appearance. Although there
were some inconsistencies, the eyewitnesses described a Hispanic male, with
similar complexion and build as appellant, flee immediately after complainant
was shot.  Additionally, Hernandez testified that the gunman was dressed like a
waiter, and Sergeant Robertson testified appellant was employed at Cabo
Restaurant at the time of the murder. 

 

 








B.        Forensic
Evidence

Appellant
next contends the State presented no forensic evidence linking appellant to
complainant=s murder or complainant himself.  However, the police discovered
appellant=s blood on the Lincoln Town Car parked next to complainant=s body.  Such evidence demonstrates a
connection between appellant and complainant=s murder.  

C.        Motive

Appellant
further argues that the State presented no evidence demonstrating any motive
for appellant to murder complainant.  Although motive is not an element of
murder, it may be a circumstance indicative of guilt.  See Clayton, 235
S.W.3d at 781; Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App.
2004).  The State=s theory was that appellant murdered complainant after
complainant attempted to stop appellant=s burglary of a Lincoln Town Car in
the T-Town bar=s parking lot.  The police discovered pry marks on the Town Car=s door and appellant=s blood on the broken window glass
and the glove compartment door.  Additionally, Sergeant Jose Mora testified
complainant worked as a valet in the T-Town parking lot.  Therefore, the jury
could rationally infer complainant=s murder stemmed from an attempted
burglary.  Although circumstantial evidence of motive does not conclusively
establish appellant=s guilt, the jury could have concluded that appellant
attempted to burglarize the car and complainant intervened, providing appellant
a motive for murder.  

D.        Murder
Weapon

Additionally,
appellant emphasizes that the State never recovered the murder weapon. 
Moreover, appellant notes the handgun in his possession at the time of his
arrest could not have been the murder weapon.  However, as stated above, the
State was not required to produce the murder weapon to establish appellant=s guilt.  See Victor, 874
S.W.2d at 751.

 








E.        Evidence
Appellant Fired a Gun

Appellant
contends the evidence is factually insufficient to prove he possessed or fired
a gun at the scene of complainant=s murder.  However, the eyewitnesses
described a man who matched appellant=s physical appearance who had a
handgun and fled the scene in a red Mercury Cougar immediately after
complainant was shot.

F.        Alibi
Witness

Finally,
appellant contends the State did not present any evidence placing him at the
scene of complainant=s murder, and the State failed to rebut or effectively
impeach his alibi witness.  However, as stated above, the jury is free to
believe or disbelieve a witness=s testimony.  Jones, 984 S.W.2d at 257.  Although we
may substitute our judgment for the jury to a limited degree when considering
factual-sufficiency claims, this case does not warrant such action.  The State
presented physical evidence connecting appellant to the scene of complainant=s murder, and it is clear the jury
did not believe appellant=s exculpatory explanations.  We defer to the jury relative to
the credibility of appellant=s alibi witness.

G.        Conclusion

After
reviewing the appellate record in a neutral light, we cannot conclude that the
evidence is so weak that the jury=s verdict is clearly wrong and
unjust, or that the cited inconsistencies render the verdict contrary to the
great weight and preponderance of the evidence.  We overrule appellant=s second issue.

Accordingly,
the judgment of the trial court is affirmed.

 

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Memorandum Opinion filed
February 26, 2008.

Panel consists of Chief Justice Hedges and Justices
Anderson and Seymore.

Do Not Publish C
Tex. R. App. P. 47.2(b).









[1]  Seljouki and Hernandez each testified that
complainant fled in a Mercury Cougar, but Mark and Jason Losaya believed the
car was a red or maroon Mercury Cougar or Ford Thunderbird.





[2] Mark and Jason Losaya provided somewhat differing
descriptions of the gunman=s clothingBMark Losaya testified the gunman wore a white t-shirt,
while Jason Losaya testified the gunman wore a red or white t-shirt.





[3]  Appellant notes that Mark and Jason Losaya described
the vehicle as a red or maroon Mercury Cougar or Ford Thunderbird.  However,
Sergeant Robertson testified, based on his personal experience, that older
model Thunderbirds and Cougars, such as the car observed by the eyewitnesses
and the car owned by appellant, bear the same appearance.





[4]  Appellant seems to argue that Seljouki asserted the
gunman fled the scene of complainant=s
murder in a Cadillac.  However, the record citations contained in appellant=s brief are to testimony that the argument prior to
complainant=s murder occurred next to a Cadillac.  We can find,
and appellant cites, no testimony  asserting the gunman fled in a Cadillac.