

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

## No. 02-19-00246-CR

———————————————————

PAUL ALLEN WARD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the County Court at Law
Hood County, Texas
Trial Court No. 51433

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Paul Allen Ward challenges his conviction and sentence for misdemeanor driving while intoxicated[1] on a single ground: that although the State proved that someone with the same name drove while intoxicated and was involved in a single-vehicle accident on September 2, 2017, it did not establish that he was the person who did so. We affirm.

### Standard of Review

We dispense with a summary of the background facts up front because we must examine the trial evidence to determine Ward's issue. A familiar standard guides our sufficiency review: we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). In doing so, we consider even improperly admitted evidence. *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

### Trial Evidence

#### The 911 calls

The State played for the jury recordings of three 911 calls from the same caller.

---

[1]*See* Tex. Penal Code Ann. §§ 49.04, 49.09(a).

In the first recording, the caller told the operator that "a man" had wrecked his car in Pecan Plantation and needed help. That call disconnected when the caller went to find an address and did not continue to talk to the operator.

The operator initiated the second call. The caller gave his name and an address for his location, told the operator that the man who had wrecked appeared to have "hit his head" but was awake, and confirmed that one vehicle was involved and its front end and side were "pretty banged up." The caller also told the operator that the accident victim seemed drunk or intoxicated, did not know his own name, and was bleeding "pretty serious[ly]." The caller thought the man was around either 50, 40, or 30 years old. The caller also reported a bottle of vodka near the wreck.

In the third 911 call, the operator instructed the caller how to care for the victim and to make the area secure while waiting for emergency responders.

**The accident investigation**

Casey Wilken, a Hood County Sheriff's Office investigator, responded to the accident around 9:30 p.m. on September 2, 2017. When Wilken arrived, he saw a car "maybe 50 yards off the road in the trees," along with a couple of witnesses and seven or eight medics and volunteer firefighters. Wilken talked to four or five of them. But Wilken was not able to talk to the accident victim, who was already in an ambulance;

"through [the man's] driver's license," Wilken identified him as "Paul Allen Ward." A helicopter crew flew the victim to John Peter Smith Hospital (JPS).[2]

Wilken investigated the wreckage, finding front-end damage to the car, broken taillights and headlights, and a missing "door skin" from the passenger-side back door. He also found tire marks showing where the car had gone off the road, an empty bottle of vodka underneath the car, an opened but empty vodka bottle in the passenger seat, and an unopened full bottle of vodka in the center console. Wilken discovered that a heavy-duty stone mailbox "maybe a quarter mile up the road . . . had been hit and destroyed." The "door skin" from the passenger-side back door of the wrecked car was in the driveway of the house with the destroyed mailbox. The trial court admitted photographs of the car and mailbox damage.

**The hospital**

The State called a JPS nurse to testify about his review of "some records pertaining to Paul Ward" that were labeled with Ward's full name, birthdate, and a medical-record number. The nurse affirmed that the records show that on September 2, 2017, hospital staff drew blood from the patient. The nurse testified that he "probably supervised" the blood draw, but he could not say whether he was physically present during the draw; he did not remember Ward or anything about him.

---

[2]It is unclear whether the victim was initially placed in an ambulance and then moved to a helicopter or if Wilken referred to the helicopter as an ambulance.

Next, a JPS laboratory-quality manager testified that Ward's medical records—admitted during the manager's testimony—showed that an enzyme-immunoassay test was performed and that the blood-alcohol result from that test was 363 milligrams per deciliter. No witness converted milligrams per deciliter for the jury, but Wilken testified that blood-alcohol level is measured in terms of milligrams per deciliter and that there are 100 milliliters in a deciliter.[3]

The medical records confirm the JPS nurse's and lab manager's testimony about the blood draw and results.[4] In addition to notes for the September 2, 2017 care, the records also contain an inpatient pain-management progress note for September 8, 2017:

> Paul Allen Ward [was] seen at the request of [D]r. [N]orris for pain control issues. Pt was involved in a MVC under the influence of alcohol. He states he does not recall the situation too much but remembers that he was started on [C]hantix a couple of weeks back and stopped cold turkey due to 'psychotic dreams and visions'. . . . He also admits to just wanting to sleep so he drank a bottle of vodka the day of the accident.

**Analysis**

Ward does not argue on appeal that the State failed to prove the offense charged. He contends that the State failed to prove that he is the same person as the

---

[3]Expressed in grams per milliliter, the test result is thus .363. *See* Tex. Penal Code Ann. § 49.01(1)(B) (defining "alcohol concentration," in part, as "the number of grams of alcohol per . . . 100 milliliters of blood").

[4]The birthdate on the records matches the birthdate on the driver's license Wilken used to identify the accident victim.

driver of the wrecked car and the person admitted to JPS after the wreck because (1) no witness identified him in court, (2) other witnesses could have been called to identify the wreck victim, and (3) there was no evidence before the jury of his birthdate and full name.

Ordinarily, the State must prove that the accused is the person who committed the crime charged. *Hightower v. State*, 389 S.W.2d 674, 676 (Tex. Crim. App. 1965); *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see also Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (explaining that State may provide such proof with direct or circumstantial evidence and that jury may make reasonable inferences from that evidence); *Bin Fang v. State*, 544 S.W.3d 923, 927–28 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (same).[5] But here, Ward's attorney conceded to the jury that the medical records and blood-alcohol-test results were Ward's. Ward called only one witness, a blood-alcohol-testing expert, to testify about the unreliability of the enzyme-immunoassay test as opposed to a gas-

---

[5]Ward waived arraignment. The State contends that no further proof of identity is required when a defendant waives arraignment or fails to object that the name in the charging instrument is not his own. *See* Tex. Code Crim. Proc. Ann. art. 26.02 ("An arraignment takes place for the purpose of fixing his identity and hearing his plea."). But facts alleged in a charging instrument are not proof that a person committed an offense. *Id.* art. 38.03; *Morey v. State*, 744 S.W.2d 668, 670 (Tex. App.—San Antonio 1988, no pet.); *cf. Jackson v. State*, Nos. 05-01-01840-CR, 05-01-01841-CR, 2002 WL 31656102, at *2–4 (Tex. App.—Dallas Nov. 26, 2002, no pet.) (not designated for publication) (holding that appellant could not claim on appeal that evidence was insufficient to prove he committed offense because his name was "Raul David Jackson," rather than "Bryan Gene Jackson" as alleged in indictment).

6

chromatography test. Ward's apparent trial strategy was to try to cast reasonable doubt on the sufficiency of the State's proof that he was intoxicated at the time he was driving rather than at some later time after the wreck.

In light of counsel's express concession that the medical records were Ward's, we conclude that the evidence was sufficient to support the conviction. *See U.S. v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (holding that defense counsel's concession in closing argument was judicial admission that dispensed with government's burden to prove conceded fact); *see also Bryant v. State*, 187 S.W.3d 397, 400–01 (Tex. Crim. App. 2005) (explaining effect of stipulation to facts as judicial admission); *cf. Hitchery v. State*, Nos. 05-04-00032-CR, 05-04-00033-CR, 2005 WL 237230, at *4–5 (Tex. App.—Dallas Feb. 2, 2005, no pet.) (not designated for publication) (holding, in context of now-defunct criminal-factual-sufficiency standard of review, that appellant was estopped from challenging evidence's sufficiency based on his attorney's concession).

We therefore overrule Ward's sole issue.

## Conclusion

Having overruled Ward's sole issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 4, 2021