**Affirmed and Memorandum Opinion filed October 6, 2022.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-21-00498-CR

**CHARLIE ROBERTS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 1623005**

## M E M O R A N D U M   O P I N I O N

Appellant Charlie Roberts was convicted of burglary of a habitation and sentenced to 18 years' confinement. *See* Tex. Penal Code Ann. § 30.02(a)(3). In a single issue, Appellant asserts the evidence is legally insufficient to support his conviction. For the reasons below, we affirm.

### BACKGROUND

Appellant was arrested in February 2019 and charged with the offense of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02(a)(3). Appellant

pleaded not guilty and proceeded to a jury trial. The jury found Appellant guilty of the offense and assessed punishment at 18 years' confinement. Appellant timely appealed.

**ANALYSIS**

In a single issue, Appellant asserts the evidence is legally insufficient to prove that he is the person who committed the charged offense.

## I.        Standard of Review and Governing Law

To determine whether legally sufficient evidence supports a conviction, we consider all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012). The jury is the sole judge of the credibility of witnesses and the weight afforded to their testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may choose to disbelieve all or part of a witness's testimony, and we presume the jury resolved any conflicts in the evidence in favor of the prevailing party. *Thomas v. State*, 444 S.W.3d 4, 8, 10 (Tex. Crim. App. 2014); *Green v. State*, 607 S.W.3d 147, 152 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Moreover, the jury is permitted to draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). "Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction." *Davis v. State*, 586 S.W.3d 586, 589 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd).

2

A person commits burglary of a habitation if the person, without the effective consent of the owner, enters a habitation with the intent to commit theft or enters a habitation and commits or attempts to commit theft. *See* Tex. Penal Code Ann. § 30.02(a)(1)(3). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. *Id*. § 31.03(a).

Appellant does not dispute that a burglary occurred; rather, Appellant argues that the evidence is insufficient to show he was the person that committed the burglary. "Unquestionably, the State must prove beyond a reasonable doubt that the accused is the person who committed the crime charged." *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). As with the other elements of an offense, identity can be proven through direct or circumstantial evidence. *Long v. State*, 525 S.W.3d 351, 363 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). When identity is at issue, we must consider the combined and cumulative force of all evidence. *See Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012).

## II.      Evidence at Trial

The jury heard testimony from five witnesses.

The first witness to testify was Complainant, who owned the house that was burglarized. According to Complainant, he was at work the afternoon of February 27, 2019, when he received a notification on his phone from his doorbell camera. Complainant said he viewed his doorbell camera and saw a person knocking on his front door.

Complainant said he received a second notification from his backyard camera about 30 minutes later. Appellant started watching the camera and recalled seeing "two people crawling through [his] backyard in masks." The footage from Complainant's backyard camera was admitted into evidence. The footage shows

3

two men in black hoodies and black masks walking through Complainant's backyard towards his back door. The footage then shows the two men running back through Complainant's backyard towards the fence. The men are carrying what appear to be white pillowcases filled with objects. One man is wearing jeans and the other is wearing black athletic pants with white stripes on the sides. The man in the athletic pants is also wearing a white shirt, the tail of which can be seen coming out from under his black hoodie. After the men exit the backyard, a white truck can be seen pulling up near the fence; both men get in the truck and it drives away.

According to Complainant, the two men who entered his house also set off his alarm system. Complainant said he called 911 and proceeded to drive to his house. When he arrived, Complainant recalled seeing that the glass back door had been "shattered" and that the house was "ransacked." Complainant said he noticed several specific items were missing, including jewelry boxes that were taken from the bedroom.

Police officers responded to Complainant's house and he reported the missing property. According to Complainant, officers were able to recover and return the missing items within approximately three hours.

Officer Tallant was the second witness to testify. Officer Tallant said he is an investigator with the Houston Police Department and, on the day in question, he was stationed in a school parking lot located near Complainant's house. According to Officer Tallant, he was "conducting proactive burglary investigations in that area on specific restaurants, due to the high increase in burglary of motor vehicles in the area." Officer Tallant said he was wearing plain clothes and driving an unmarked vehicle.

While stationed in the parking lot, Officer Tallant recalled seeing "a white

extended cab Chevy truck that made a pass, with dark tinted windows, in front of me a couple of times" before parking. Agreeing that this behavior seemed "strange," Officer Tallant said "we'll have people that will make multiple passes when they're trying to case out a certain area or parking lot if they're going to target it for burglaries."

Officer Tallant testified that he was watching the white truck when he received a radio call reporting a burglary at a house close to his location. Shortly thereafter, Officer Tallant saw the white truck pull up next to a house's backyard fence. Watching through his binoculars, Officer Tallant observed "[t]wo black males [] come over the fence" and get in the white truck. According to Officer Tallant, one of the men that climbed over the fence was wearing "a jacket with a hood on; and there was, like, some white on [his] pants."

Officer Tallant sent out a radio call to other police units in the area and began following the white truck in his unmarked vehicle. Officer Tallant continued to pursue the white truck as it got on Interstate 10 traveling east and "never lost sight of it until our marked patrol unit caught up." According to Officer Tallant, the marked patrol vehicle attempted to initiate a traffic stop on the white truck but the driver drove off and eventually "ended up causing a major accident" on the freeway. By the time Officer Tallant reached the scene of the vehicle crash, the occupants of the truck had fled on foot.

Shortly thereafter, police officers apprehended two individuals who were suspected of being involved in the burglary and subsequent vehicle chase, one of whom was Appellant. The officers transported the individuals to a nearby parking lot. Officer Tallant said he proceeded to the parking lot and identified Appellant as one of the individuals involved in the burglary. Officer Tallant reiterated this identification in court and testified that Appellant was one of the individuals he

5

saw jumping over Complainant's backyard fence.

According to Officer Tallant, a search of the white truck revealed property belonging to Complainant. Officer Tallant said the officers also found a white pillowcase with blood on it.

Officer Brooks was the third witness to testify. On the day of the burglary, Officer Brooks said he was driving his patrol vehicle with Officer Hernandez riding as a passenger. Officer Brooks said they received a radio call reporting a burglary in progress. Officer Brooks proceeded to drive on Interstate 10 headed east, attempting to catch up to the white truck. Officer Brooks recalled that the weather was "muggy" with a "light rain."

According to Officer Brooks, they spotted a white truck that matched the description they had received and attempted to initiate a traffic stop. Officer Brooks said the truck drove off and the officers pursued it for approximately five miles. Officer Brooks recalled that the truck "ended up hitting another vehicle, crashing into another vehicle from behind."

Officer Brooks said that, after the vehicle crashed, he saw three people get out, climb up a nearby embankment, jump over a fence, and run through a field. Officer Brooks exited his vehicle and attempted to chase the three individuals on foot before stopping at the fence. Describing what the individuals were wearing, Officer Brooks said:

> [T]hey were wearing all black, hoodies; and I noticed the one was — because what stood out to me was black shoes with white soles and black and white jogging pants.

According to Officer Brooks, he returned to his patrol vehicle and put out a description of the individuals over the radio. Officer Brooks said two individuals were apprehended in the area near the vehicle crash and transported to a nearby

6

parking lot. Officer Brooks said he proceeded to the parking lot and identified Appellant as one of the individuals who ran from the white truck. When asked "how" he recognized Appellant, Officer Brooks referenced Appellant's clothing, particularly "the white stripe and black and white shoes." Officer Brooks reiterated this identification in court and pointed to Appellant as the person he pursued after the vehicle crash.

The jury also heard from Officer Hernandez, who was traveling with Officer Brooks in the patrol unit. Officer Hernandez gave a similar account of the relevant events: he and Officer Brooks pursued the white truck on Interstate 10 until it crashed into another vehicle, after which three individuals fled from the truck on foot. Describing what the individuals were wearing, Officer Hernandez said "one was wearing all black and the one had, like, a white T-shirt and black, like, workout pants, jog pants, sweatpants, something like that."

After the vehicle crash, Officer Hernandez said he and Officer Brooks proceeded to a nearby parking lot where two apprehended individuals were being held. Officer Hernandez said he identified Appellant as one of the suspects who ran from the truck, pointing out that he was wearing the "same clothing . . . plus muddy legs and shoes." Officer Hernandez recalled that the field the suspects ran through "was muddy all over the place" and said Appellant had mud on his shoes, legs, and t-shirt. Officer Hernandez reiterated this identification in court.

Finally, the jury heard from Officer Escobedo, who apprehended Appellant near the scene of the truck crash. On the day in question, Officer Escobedo said he received a radio call reporting "individuals fleeing on foot from a vehicle." Officer Escobedo helped establish a perimeter and was stationed approximately one-quarter mile from the truck crash. While at his station, Officer Escobedo observed Appellant "walking on the sidewalk." Stating that Appellant matched the

description of one of the suspects who fled from the truck, Officer Escobedo testified that:

> [Appellant] had a white — like, a white T-shirt, black pants, possibly jogging loose pants; but most of all, I noticed there was — he had grass in his hair. I want to call it, like, yellowish, dry grass in his hair and on his shirt and arms; and he also had a — he also had a — he was sweaty, very sweaty; and he had small cuts on his knuckles and hands and fingers.

Officer Escobedo also noticed that Appellant was muddy. When asked why he took note of these details, Officer Escobedo said he had been informed that the suspects had "run[] through a field," which was consistent with the grass and mud on Appellant and the fact that Appellant appeared sweaty. Officer Escobedo also recalled that Appellant's pants had "white stripes on each side running down the side of the legs." Officer Escobedo took Appellant into custody and transported him to the parking lot where the other officers identified Appellant as one of the individuals involved in the burglary and subsequent vehicle crash.

## III.     Application

This evidence, considered in the light most favorable to the jury's verdict, is legally sufficient to support Appellant's conviction. Specifically, the combined force of all the evidence is sufficient to support the finding that Appellant was one of the individuals who burglarized Complainant's house. *See* Tex. Penal Code Ann. § 30.02(a)(3); *Merritt*, 368 S.W.3d at 526.

After he was apprehended by Officer Escobedo, Appellant was transferred to a nearby parking lot. At the parking lot, Officers Tallant, Brooks, and Hernandez identified Appellant as one of the persons they saw burglarizing Complainant's house and running from the white truck after it was involved in the crash on Interstate 10. Officers Tallant, Brooks, and Hernandez also made in-court identifications of Appellant as a person involved in the burglary and subsequent

vehicle crash. These positive identifications of Appellant as the perpetrator are sufficient to support the jury's finding that Appellant committed the charged offense. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *see also Johnson v. State*, 176 S.W.3d 74, 77-78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding that the evidence was legally sufficient to support conviction for aggravated robbery based on the complainant's testimony and identification).

Appellant argues that these witnesses "did not get a good enough look at the suspects to be able to identify Appellant at the time of his arrest or in the courtroom." Specifically, Appellant points out that Officer Tallant viewed the burglary suspects from a distance and while they were wearing masks. With respect to Officers Brooks and Hernandez, Appellant asserts that they only saw the suspects' backs as they ran from the white truck after the crash on Interstate 10.

But Appellant did not challenge the admissibility of these witnesses' pretrial and in-court identifications, either in the trial court or on appeal. *See, e.g.*, *Coleman v. State*, 627 S.W.3d 340, 342-43 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (reviewing the trial court's ruling on a motion to suppress a pretrial identification); *McGuire v. State*, 631 S.W.3d 222, 232 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (reviewing the trial court's ruling on a motion to suppress an in-court identification). Therefore, Appellant's arguments go to the weight of the identifications — not their admissibility. The jury is the sole judge of the weight afforded to witness's testimony. *Montgomery*, 369 S.W.3d at 192.

Moreover, considering these arguments in conjunction with the remainder of the witnesses' testimony, they do not render the witnesses' identifications legally insufficient. All three witnesses supported their identifications of Appellant with reference to specific details: Officer Tallant noted that one of the suspects had

"some white on [his] pants"; Officer Brooks referenced the "white stripe" on Appellant's pants and his "black and white shoes"; and Officer Hernandez pointed to Appellant's "white T-shirt and black, like, workout pants, jog pants, sweatpants, something like that." These descriptions matched the clothing Appellant was wearing when he was apprehended by Officer Escobedo.

Officer Escobedo also testified to other factors supporting the identification of Appellant as one of the suspects involved in the burglary. Officer Escobedo recalled noticing that Appellant was "slightly muddy," had "dry grass" in his hair and on his shirt, and appeared "very sweaty." According to Officer Escobedo, this evidence was consistent with reports that the suspects had fled through a field after the vehicle crash on Interstate 10. Officer Escobedo also noted "small cuts on [Appellant's] knuckles and hands and fingers," which were consistent with the blood Officer Tallant recalled seeing on the pillowcases recovered from the white truck.

Considered together, this evidence is legally sufficient to support the jury's finding that Appellant committed the charged offense. *See* Tex. Penal Code Ann. § 30.02(a)(3). We overrule Appellant's issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/     Meagan Hassan
Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.
Do Not Publish — Tex. R. App. P. 47.2(b).

10