Affirmed and Memorandum Opinion filed June 19, 2008








Affirmed and Memorandum Opinion filed June 19, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00189-CR

NO. 14-07-00191-CR

_______________

 

DAVID SIDNEY HISEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 122nd District Court

Galveston County, Texas

Trial Court Cause Nos. 05CR2756 &
01CR0556

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

A jury
found appellant, David Sidney Hisey, guilty of murdering his parents, Hollis
and Sunnye Hisey.  The trial court assessed concurrent sentences of fifty years= confinement.  In two issues,
appellant contends the evidence is legally and factually insufficient to
support his convictions.  All dispositive issues are clearly settled in law. 
Accordingly, we issue this memorandum opinion and affirm.  See Tex. R.
App. P. 47.4.

 

 








I. Background

In 1995,
appellant moved to Galveston, Texas, purportedly to care for Hollis and Sunnye
Hisey, his elderly parents.  The State alleges that appellant strangled and
killed his parents sometime before September 1, 2000.

In
August 2000, the Galveston County Sheriff=s Department began an investigation
into the welfare of Hollis and Sunnye.  On September 1, 2000, Sergeants Bruce
Balchunas and Perry Larkin attempted to locate Hollis and Sunnye at their home.[1] 
The officers received no response at the door.  However, while they prepared to
leave, the officers observed appellant pull into the driveway.

The
officers approached appellant, identified themselves, and expressed concern
regarding the welfare of Hollis and Sunnye.  Appellant told the officers his
parents were Afine,@ but stated that they were with his aunt in Ruyle, Texas.  After some
additional conversation, appellant voluntarily signed a consent to search his
parents= residence.

Inside
the home, the officers discovered a locked bedroom door, sealed with masking
tape.  The officers also observed a folded towel laid at the foot of the door
and a white powder spread on the carpet in front of the door.  According to
appellant, the room was infested with flies, and he sealed the door to prevent
the smell of bug spray from permeating the house.  Appellant asked the officers
to wait four hours before searching the sealed room to give the bug spray time
to dissipate.  However, appellant agreed to allow the officers into the room
after Sergeant Larkin promised to reseal the door.








Sergeant
Larkin searched the bedroom while Sergeant Balchunas waited with appellant in
the living room.  Inside the bedroom, Sergeant Larkin discovered the bodies of
Hollis and Sunnye laid on a bed.  Returning to the living room, Sergeant Larkin
conducted a pat-down search of appellant and instructed appellant to sit on the
living room couch.  As appellant waited, he reached under the couch and
retrieved a hidden rifle.  Appellant placed the rifle barrel under his chin,
but the officers wrested the rifle away from him.  Galveston police officers
eventually arrived, and appellant was arrested.

Drs.
Charles Harvey, Harrell Gill-King, Sparks Veasey, III, Lloyd White, and Paul
Radelat testified as expert witnesses regarding cause of death.[2] 
Dr. Harvey determined that Sunnye died approximately one year before her body
was discovered.  He further concluded that Hollis died approximately two to six
months before appellant was arrested.  Furthermore, Dr. Harvey opined that,
despite dying several months apart, both Hollis=s and Sunnye had similar fractures in
the hyoid bone and thyroid cartilage.  Drs. Harvey, Gill-King, and Veasey
observed signs of hemorrhage around the fracture sites.  Although both bodies exhibited
signs of potentially lethal disease, Drs. Harvey, Gill-King, and Veasey
concluded Hollis and Sunnye died from strangulation.

Drs.
White and Radelat testified that the evidence was inconclusive regarding the
cause of death.   Although they both noted the fractures of Hollis=s and Sunnye=s hyoid bones and thyroid cartilage,
neither Dr. White nor Dr. Radelat observed conclusive evidence of hemorrhage in
either body.  Without ruling out strangulation as a possible cause of death,
Drs. White and Radelat testified that the evidence did not lead them to the
conclusion that Hollis and Sunnye were strangled.

 

 

 

 








II. Analysis

In two
issues, appellant contends the evidence is legally and factually insufficient
to support his convictions.[3] We disagree.

A person
is guilty of murder if he intentionally or knowingly causes the death of
another.  See Tex. Pen. Code Ann. ' 19.02 (Vernon 2003).

To
determine whether evidence is legally sufficient to support a conviction, we
view the evidence in the light most favorable to the verdict and determine
whether a rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). 
The jury is the sole judge of the credibility of witnesses and is free to
believe or disbelieve all or part of a witness=s testimony.  Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  We ensure only that the jury
reached a rational decision and do not re-evaluate the weight and credibility
of testimony.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993).

To
determine whether evidence is factually sufficient to support a conviction, we
view the evidence in a neutral light and will set aside the verdict only to
prevent manifest injustice.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006).  In conducting a factual-sufficiency review, we engage in a
two-prong test to determine whether there is some objective basis to find: (1)
the evidence in support of the jury=s verdict, although legally
sufficient, is nevertheless so weak that the jury=s verdict seems clearly wrong and
unjust; or (2) in considering conflicting evidence, the evidence in support of
the jury=s verdict, although legally
sufficient, is nevertheless against the great weight and preponderance of the
evidence.  Id. at 414B15. 








An
accused=s guilt may be proven with direct or
circumstantial evidence.  Smith v. State, 56 S.W.3d 739, 744 (Tex. App.CHouston [14th Dist.] 2001 no pet.). 
Proof through circumstantial evidence is not subject to a more rigorous
standard than is proof by direct evidence.  Id. (citing McGee v.
State, 744 S.W.2d 229, 238 (Tex. Crim. App. 1989)).  In evaluating the
sufficiency of evidence, we may not focus on a part of the evidence in
isolation but must consider all the evidence in order to recognize the significance
of any single piece.  See Clayton v. State, 235 S.W.3d 772, 779 (Tex.
Crim. App. 2007).

Appellant
contends the State presented no evidence that he caused the deaths of his
parents, and that the State=s evidence raises only a suspicion of guilt.  Appellant seems
to argue that the State=s contention that Hollis and Sunnye died due to strangulation
is against the great weight and preponderance of the evidence.  Appellant notes
that the testimony of Drs. White and Radelat controverted the State=s experts testimony regarding the
cause of death.  Further, appellant notes that Dr. Harvey=s testimony was not credible because
he contradicted statements that he made during an earlier proceeding,[4]
and his use of Arehydration@ during the autopsy was not a technique recognized by the
other testifying experts. 








However,
the jury was in the best position to judge credibility of the witnesses, and we
defer to its judgment unless the record clearly indicates a different result.  See
Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).  At trial, Dr.
Harvey testified that in cases of manual strangulation, the neck of the victim
will often exhibit fractures in the hyoid bone and thyroid cartilage as well as
hemorrhage at the fracture sites.  Every expert witness noted the necks of both
Hollis and Sunnye exhibited a fractured hyoid bone and fractured thyroid
cartilage, and Drs. Harvey, Gill-King, and Veasey observed evidence of
hemorrhage at the fracture sites.  Drs. Harvey, Gill-King, and Veasey each
concluded that Hollis and Sunnye died due to strangulation, although they could
not categorically rule out natural causes of death.  However, neither Dr. White
nor Dr. Radelat observed conclusive signs of hemorrhage, and they could not
conclude Hollis and Sunnye died from strangulation.

The jury
was entitled to decide the weight, if any, to assign to Dr. White=s and Dr. Radelat=s testimony when evaluating the
expert witnesses= credibility.  See Johnson, 23 S.W.3d at 9.  With its
guilty verdict, the jury must have decided the State=s experts were credible, and that
Hollis and Sunnye died from strangulation.  After reviewing the evidence in the
record, we cannot conclude the jury=s finding was against the great
weight and preponderance of the evidence, notwithstanding the challenges to Dr.
Harvey=s credibility and Dr. White=s and Dr. Radelat=s controverting testimony.

Appellant
further argues that there is no physical or testimonial evidence demonstrating
he murdered his parents.  However, at trial, the State established that
appellant moved to Galveston in 1995 to take care of his parents, who by the
late 1990s were in poor health and suffering from dementia.  Appellant was his
parents= sole caretaker from 1995 until their
deaths.  Further, although Hollis and Sunnye died months apart, while in
appellant=s care, both suffered similar injuries suggestive of strangulation while
in appellant=s care.  Each of the State=s experts concluded that Hollis and
Sunnye died due to strangulation.








Additionally,
the evidence demonstrated that appellant lived in his parents= home from 1995 until his arrest on
September 1, 2000, remaining in the house with his parents= corpses after their deaths. 
Appellant used his parents= retirement and social security income to support himself
both before and after their deaths, and he attempted to conceal their deaths
from friends, family, and law enforcement officials.  At trial, appellant
admitted that he placed his parents= bodies in the bedroom to decompose. 
Appellant also repeatedly lied regarding his parents= welfare and whereabouts.  At various
times after his parents= deaths, he told inquirers that Sunnye was unavailable
because she was in bed most of the time, his parents were living in an
unlicensed nursing home, and his parents were traveling.  Appellant further
admitted placing a note on the front and back doors of his parents= house in an attempt to dissuade
people from entering the home.[5]  Finally,
appellant attempted to commit suicide when Sergeant Larkin discovered Hollis=s and Sunnye=s bodies.

Appellant
argues that his living in a house with their bodies, using their incomes for
support before and after their deaths, laying their bodies in a bed to
decompose, and concealing their bodies from friends, family, and law
enforcement does not prove he murdered his parents.  Appellant also argues the
State=s expert witness testimony regarding
the causes of Hollis=s and Sunnye=s deaths is not probative regarding his guilt because, even
if they were strangled, the expert testimony does not prove he committed that
strangulation. Additionally, appellant contends there is no evidence he
possessed the requisite culpable mental state for murder.








However,
as stated above, an accused=s guilt may be proved with either direct or circumstantial
evidence.  Smith, 56 S.W.3d at 744.  Additionally, a jury may infer
intent from a defendant=s acts, words, and conduct, from the method of committing the
crime, and from the nature of the wounds inflicted on the victim.  Hart. v.
State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).  The jury heard testimony
that, even though Hollis and Sunnye died months apart, both of their bodies
exhibited similar injuries indicating strangulation.  Their injuries were
caused while appellant lived in their house acting as their sole caretaker. 
Further, appellant attempted to conceal his parents= deaths from friends, family, and law
enforcement officials inquiring about their welfare by hiding their bodies in a
sealed bedroom, lying about their welfare and whereabouts, and placing signs on
their house to deter people from entering.

We
conclude that, rather than raising mere suspicions of guilt, the evidence is
sufficient to support the jury=s verdict.  After examining the evidence in the light most
favorable to the verdict, we conclude that the jury the could have found
appellant intentionally and knowingly caused the deaths of Hollis and Sunnye. 
Further, after examining the evidence in a neutral light, we cannot conclude
that the evidence in support of the jury=s verdict is so weak that the jury=s verdict seems clearly wrong and
unjust, or in considering conflicting evidence, the jury=s verdict is against the great weight
and preponderance of the evidence.  Appellant=s two issues are overruled.[6]

Accordingly,
the judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed June 19, 2008.

Panel consists of Justices Fowler,
Seymore and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b)









[1]  This was the third attempt by the sheriff=s department  to locate Hollis and Sunnye.  The first
two attempts, conducted on August 25 and 28, 2000, were unsuccessful.  





[2]  Drs. Harvey, Gill-King, and Veasey testified for the
State, and Drs. White and Radelat testified for the defense.





[3]  Although a number of appellant=s arguments in support of his legal and factual
sufficiency claims are somewhat unclear, we have attempted to construe his
arguments to support his stated issues.





[4]  Dr. Harvey testified in the earlier proceeding that
he was Apretty sure@ 
he observed hemorrhage around the fractures in Hollis=s and Sunnye=s
necks and that placement of organic tissue in a formalin solution causes the
tissue to lose evidence of hemorrhage within two to three days.  However, at
trial, Dr. Harvey testified that he observed darkening in Hollis=s and Sunnye=s
necks that was Asuggestive@ of
hemorrhage and that evidence of hemorrhage would be permanently fixed by the
formalin solution.  





[5]  The note stated AI
know you=re gone away [sic].  Contact me when you get back. 
Andy.@





[6]  Appellant also seems to contend that the entirety of
the State=s evidence is irrelevant and should have been
excluded.  See Tex. R. Evid. 401 (A>Relevant
evidence= means evidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action
more probable or less probable than it would be without the evidence.@); Tex. R. Evid. 402 (AEvidence which is not relevant is inadmissible.@).  However, appellant provides no analysis or
citations to the record regarding his claim that the State=s evidence is irrelevant.  Therefore, appellant has
waived these issues.  See Tex. R. App. P. 38.1(h); San Saba Energy,
L.P. v. Crawford, 171 S.W.3d 323, 338 (Tex. App.CHouston [14th Dist.] 2005, no pet.).