**Affirmed and Opinion Filed May 28, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00146-CR

## ESSIE D. HOPKINS, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court
Dallas County, Texas
Trial Court Cause No. F-1355764-U

## MEMORANDUM OPINION
Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Stoddart

A jury convicted Essie D. Hopkins of aggravated robbery. Hopkins pleaded true to enhancement allegations and the trial court assessed punishment at life imprisonment. Hopkins raises three issues on appeal, arguing the evidence is insufficient to prove he committed the offense, the jury charge defined robbery under a different theory than alleged in the indictment, and the evidence is insufficient to prove the enhancement allegations.

We affirm the trial court's judgment.

### BACKGROUND

Connie Witrago returned home from work on March 3, 2013. As she walked from the parking lot to her apartment at the back of the complex, a man approached her and grabbed her purse. She struggled with the man for a while until the purse broke and the man ran away with it. Witrago chased after him, but the man pulled out a gun and fired it at her. She thought he

was going to kill her, but the bullet missed her. The man fled the scene and Witrago called 911. Witrago did not get a good look at the man's face, but noticed he was tall and thin. She did get a good look at his eyes, which she described as big and yellow. Police found a fired .380 caliber cartridge casing in the grass near Witrago's apartment.

Two months after the robbery, Witrago's son told her the police were arresting a man in the apartment parking lot. Witrago ran to the parking lot and immediately recognized Hopkins as the man who robbed her. She thought Hopkins recognized her as well. She told the police officer she was fairly certain Hopkins was the man who robbed her, but was not 100 percent certain. Witrago told Detective Angela Nordyke at the police station that she was about 60 percent sure Hopkins was the man who robbed her. She explained at trial, that when she saw him in the squad car, she was sure it was him when she saw his eyes. Witrago testified she recognized his expression and the way he looked at her when he was arrested helped her to identify him as the robber.

Officers Brent Anderson and Edward Van Meter responded to a suspicious person call at the apartment complex about two months after Witrago was robbed. They talked to Hopkins because he matched the description of the suspicious person. Anderson noticed the butt of a handgun "hanging out of his pocket." The officers found a .22 long rifle caliber handgun and arrested Hopkins for possession of a firearm. As the officers were leaving with Hopkins, Witrago ran up and said she thought Hopkins was the man who robbed her. While Van Meter was talking with Witrago, Hopkins kept looking back and asking Anderson what was happening. Hopkins appeared to be very nervous about Witrago talking to Van Meter.

After talking to Witrago, Nordyke interviewed Hopkins. The interview was recorded and portions were played to the jury. About an hour into the interview, Nordyke mentioned that Witrago had seen Hopkins in the squad car. Hopkins repeatedly denied any involvement in the

robbery.  As part of her interrogation strategy, Nordyke told Hopkins Witrago identified him because of the teardrop tattoo near his eye and had picked him out of a photo lineup.  Nordyke also claimed to have security camera video footage from the apartment complex showing he was the robber. Nordyke told Hopkins he left a fired shell casing at the scene with his fingerprint on it, but she did not tell him the caliber of the shell casing.[1]

Hopkins indicated he knew the location of all the cameras at the apartment complex. Hopkins said Witrago must have been lying because the only cameras were around the pool and he did not rob anyone by the pool.  Then he said, "If you can prove that I done shot a .380 – not, not, not a .380, a .22, if I done shot a .22 anywhere in those apartments, you can lock me up." Nordyke asked Hopkins why he mentioned a .380? Hopkins said, "I meant a .22. . . . I got a .22. . . . I didn't get caught with no .380."  Hopkins denied owning a .380, but when Nordyke again said police found his fingerprints on the .380 shell casing, Hopkins said he did not believe that his prints were on the casing because when he bought it, he "kept that gun like it was brand new" and never touched it.

The interview lasted around two hours.  Hopkins asked if he could go home several times.  After he mentioned that the gun was a .380, he told Nordyke that his head was not right and he would probably say "yes" to anything.

Hopkins finally admitted to robbing Witrago.  He admitted snatching her purse.  He told Nordyke he bought the .380 on the street and threw the gun in the trash after the robbery because he knew he "messed up."  Nordyke asked if he could describe Witrago, and he said, "I know that's her.  I tell you the truth. I know that's her."  He admitted he took the purse at the back of the apartments.

---

[1] Nordyke testified there were no fingerprints found on the shell casing because it had been handled by members of Witrago's family before police arrived.  There was also no security camera recording of the robbery and Witrago did not identify Hopkins from a photo lineup.

Nordyke testified she did not tell Hopkins the caliber of the shell casing or that robbery occurred at the back of the apartments. Hopkins mentioned the .380 shell casing and Nordyke could tell Hopkins realized he "slipped up." Hopkins also knew where the robbery occurred even though Nordyke had not given him that information.

STANDARD OF REVIEW

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011) (footnotes omitted).

This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* Our review of all of the evidence includes evidence that was properly and improperly admitted. *Id.* When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally: Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d

–4–

234, 240 (Tex. Crim. App. 1997)).

As applicable here, a person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). A person commits robbery if the person, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. *Id*. § 31.03(a), (b)(1). A firearm is a deadly weapon. *Id.* § 1.07(a)(17)(A).

## ANALYSIS

### A. Identification

Hopkins contends the evidence identifying him as the robber is insufficient. Specifically, he contends his confession was false, Witrago could not identify him "100 percent" as the robber, and there is no physical evidence linking him to the crime.

Hopkins contends his confession was false because he wanted to go home, his head was not right, and Nordyke lied to him. He does not contend his confession was involuntary, merely that it was false. His issue challenges the sufficiency of the evidence. In conducting our sufficiency review, we view the evidence in the light most favorable to the verdict and defer to the jury's determinations of credibility and weight of the evidence after drawing reasonable inferences from the evidence. *See Adames*, 353 S.W.3d at 860. Here, the jury heard the recording of the interview, saw Hopkins's demeanor during the interview, and how the confession unfolded. They also heard Nordyke's testimony regarding the interview. A reasonable fact finder could have believed Hopkins's incriminating statements in the interview

–5–

were truthful.

Although Witrago stated she was only 60 percent certain of her identification when Hopkins was arrested, she also testified she immediately recognized him and his facial expression and shaking his head "no" indicated he recognized her. She testified she "recognized his eyes, not his face."

Like any other relevant fact, identity may be proved by direct or circumstantial evidence and eyewitness identification is not necessary. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Witrago's identification testimony was only one part of the evidence the jury could reasonable consider in drawing its conclusion that Hopkins was the person who committed the offense. In addition to Witrago's testimony, there was Hopkins's confession, his knowledge of details only the robber would know, his knowledge of the location of security cameras at the apartments, his knowledge of where the robbery occurred, and his knowledge of the caliber of the gun used during the robbery.

Hopkins points out that there was no physical evidence such as fingerprints or DNA connecting him to the robbery. The lack of physical or forensic evidence, however, does not render the evidence insufficient; the lack of such evidence is simply a factor for the jury to consider in weighing all the evidence. *See Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Further, in conducting our sufficiency review, we do not focus on "evidence that was *not* admitted at trial." *Murray v. State*, No. PD-1230-14, 2015 WL 1743419, at *4 (Tex. Crim. App. April 15, 2015). What is not

in evidence is irrelevant to a determination of the sufficiency of the evidence. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986).

The record supports conflicting inferences, therefore we defer to the jury's resolution of those conflicts in favor of the prosecution. *See Clayton*, 235 S.W.3d at 778. The jury's inferences were reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *See id.* Considering all the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found Hopkins guilty of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. We overrule Hopkins's first issue.

## B. Charge Error

In his second issue, Hopkins argues the jury charge defined the offense under a different theory than alleged in the indictment and caused him egregious harm. The indictment alleged Hopkins committed aggravated robbery by threatening and placing Witrago in fear of imminent bodily injury and death and used or exhibited a deadly weapon. The abstract definition of the offense in the jury charged defined robbery as:

> Our law provides that a person commits the offense of robbery if he, in the course of committing theft, as that term is hereinafter defined, and with intent to obtain and maintain control of the property of another, intentionally or knowingly or recklessly causes bodily injury to another.

The application paragraph of the jury charge tracked the language of the indictment:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of March, 2013, in Dallas County, Texas, the defendant, **ESSIE HOPKINS,** then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten and place **CONNIE WITRAGO,** hereinafter called complainant, in fear of imminent bodily injury and death, and the defendant used and exhibited a deadly weapon, to-wit: a firearm, then you will find the defendant guilty of the offense of Aggravated Robbery, as charged in the indictment, and so say by your verdict.

Hopkins did not object to the charge at trial; accordingly, any error in the charge is

reversible only if Hopkins was egregiously harmed such that he was denied a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case, depriving the defendant of a valuable right, or vitally affecting a defensive theory. *Nava*, 415 S.W.3d at 298 (citing *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). We assess the degree of harm in light of the entire jury charge, the state of the evidence as a whole, taking into account the contested issues and the weight of probative evidence, the arguments of counsel, and any other relevant information in the record. *Id.*

Our first inquiry is whether the charge contains an error. *Almanza*, 686 S.W.2d at 171. Reviewing the charge as a whole, we conclude the abstract definition of robbery was erroneous for this case. Hopkins was indicted for committing aggravated robbery by threatening or placing Witrago in fear of imminent bodily injury or death by using a deadly weapon. The definition of robbery as occurring when a person causes bodily injury to another while in the course of committing theft is not applicable to the offense charged in this case.

However, considering the record as a whole and the factors listed in *Almanza*, we conclude the error in the charge did not cause Hopkins egregious harm. The charge as a whole was not confusing. The application paragraph correctly tracked the indictment and focused the jury's attention on the essential elements of the offense. *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."). The application paragraph did not incorporate the erroneous definition of robbery. Although some defined terms were not referenced later in the charge, superfluous abstract definitions do not affect the jury's ability to fairly and accurately

–8–

implement the commands of the application paragraph. *See Plata v. State*, 926 S.W.2d 300, 302–03 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997).

The error was not particularly harmful in light of the contested issues and the evidence. The contested issues in the case did not involve whether Hopkins caused bodily injury to another. The contested issues were the identity of Hopkins as the robber and the truthfulness of his confession. The evidence and closing arguments focused on these issues. Witrago testified she struggled with Hopkins when he grabbed her purse and fell to the ground, but there is no evidence in the record he caused her bodily injury. She testified about her fear when she saw the gun and thought Hopkins was going to kill her. In closing argument, the State argued about how terrified Witrago was because someone shot at her.

We conclude the erroneous definition of robbery did not affect the very basis of the case, deprive Hopkins of a valuable right, or vitally affect a defensive theory. *See Nava*, 415 S.W.3d at 298. Accordingly, the error did not result in egregious harm. We overrule Hopkins's second issue.

## C. Enhancement

In his third issue, Hopkins contends the evidence is insufficient to prove the enhancement allegations necessary to enhance the range of punishment to that for a habitual offender.

The indictment alleged that prior to commission of the current offense, Hopkins was finally convicted of the felony offense of aggravated assault on August 29, 2003. The State later filed a notice of intent to enhance punishment based on another prior conviction alleged to have occurred before commission of this offense. The notice of enhancement alleged a prior final conviction for aggravated assault on "the 4th day of January." Hopkins asserts the evidence is insufficient to support the enhancement allegations because the state failed to prove the year

when the conviction alleged in the notice of enhancement occurred.

At the punishment hearing, the State read the enhancement allegations in the indictment and the notice of enhancement:

> [P]rior to the commission of the offense or offenses set out above, the defendant was finally convicted of the felony offense of aggravated assault with a deadly weapon in the 195th Judicial District Court in Dallas County, Texas in Cause No. F03-62924 on the 29th day of August 2003. And prior to the commission of the aforesaid offense by the said Essie D. Hopkins, to-wit: on the 4th day of January in the Criminal District court No. 3 of Dallas County, Texas, in Cause No. F09-55986 on the docket of said court, the said Essie D. Hopkins, under the name of Essie Hopkins, was duly and legally convicted in said last named court of a felony, to-wit: aggravated assault with a deadly weapon as charged in the indictment, upon indictment, and legally pending in said last named court, and of which said court had jurisdiction. And said conviction was a final conviction and was a conviction for an offense committed by him, the said Essie Hopkins, prior to the commission of the offense herein before charged against him as set forth in the first paragraph hereof.

Appellant's counsel then entered a plea of "true" to both allegations. Appellant confirmed he was the same person who was convicted and sent to the penitentiary on the prior convictions. After some discussion, the trial court clarified by asking appellant, "Are those two prior felony convictions true or not true?" Appellant responded, "True."

The indictment and the notice of enhancement alleged sequential final convictions. Appellant's plea of true to both enhancement allegations is sufficient evidence to support a finding on those allegations. *See Wilson v. State*, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984) ("[P]leas to enhancement allegations are different from pleas at the guilt-innocence phase of trial because a plea of 'true' *does* constitute evidence and sufficient proof to support the enhancement allegations.") (emphasis in original). By pleading true to the enhancement allegations and the sequence of the convictions, appellant relieved the State of the burden to prove the prior convictions. *See Roberson*, 420 S.W.3d at 838. Nothing in the record indicates this case is within the exception where the record affirmatively shows that the enhancement itself was improper. *Id.* We overrule Hopkins's third issue.

### CONCLUSION

We conclude the evidence was legally sufficient to support the conviction and the finding of the enhancement allegations. We also conclude any error in the jury charge did not result in egregious harm to Hopkins. We affirm the trial court's judgment.

             /Craig Stoddart/
             CRAIG STODDART
             JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
140146F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

ESSIE D. HOPKINS, Appellant

No. 05-14-00146-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1355764-U.
Opinion delivered by Justice Stoddart.
Justices Lang and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of May, 2015.