**Affirmed and Memorandum Opinion filed April 19, 2016.**



In The

# Fourteenth Court of Appeals

NO. 14-15-00051-CR
NO. 14-15-00052-CR

**GLEN DALE CARTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause Nos. 1338718 & 1338719**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant of two counts of aggravated robbery and assessed punishment at forty-five years' confinement. Appellant challenges his conviction in two issues, arguing that (1) the evidence is legally insufficient to prove he was one of the four robbers; and (2) the trial court erred by failing to exclude DNA evidence about appellant's codefendants. We affirm.

# I.    SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is legally insufficient to sustain his conviction. He does not dispute that four men broke into a home and robbed the two complainants at gunpoint. But he contends the State failed to show beyond a reasonable doubt that appellant "participated in the home invasion and robbery." His challenge is to the element of identity. *See, e.g.*, *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984) (noting that the State must prove not only that an offense was committed, but that the party charged was the person who committed it or was a participant in its commission).

## A.    Standard of Review and Legal Principles

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014) (quotation omitted). We defer to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This legal sufficiency standard applies equally to circumstantial and direct evidence. *Id.*

Identity may be proven by circumstantial or direct evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "[I]dentity may be proven by inferences." *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd); *see also Smith*, 56 S.W.3d at 744 ("Identity may be proved through direct or circumstantial evidence, and through inferences."). When identity is at issue, we

must consider the combined and cumulative force of all the evidence. *See Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012). We may not employ a "divide-and-conquer" approach to reviewing the evidence. *Id.*

"[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Whatley*, 445 S.W.3d at 166 (alteration in original) (quotation omitted). In reviewing historical facts that support conflicting inferences, we must presume that the jury resolved any such conflicts in the State's favor, and we must defer to that resolution. *Id.*

We now review the evidence under the appropriate standard of review.

## B. The Evidence

Four black men wearing masks and gloves broke into the complainants' home and robbed them at gunpoint. One of the complainants called 911 before the assailants discovered him hiding in a closet. Harris County Sheriff's Deputy Mark Gustafson was dispatched to the home and found the robbers fleeing on foot. He chased all four of them on foot through an open field described as a water-retention area. Gustafson saw the suspects run into another residential area, but two of them jumped a fence to reenter the water-retention area. Those two suspects crossed a bayou toward a school and wooded area.

Within five to ten minutes of the initial dispatch, backup units had established a perimeter around the wooded area. Gustafson and other officers found and arrested two suspects who had been hiding on a patio in the residential area. Gustafson and others searched the area and found various items including ski masks, gloves, clothing, guns, and items stolen from the complainants.

K-9 Officer Larry Graves and his dog were part of the perimeter near the wooded area. Several other K-9 officers and dogs searched the wooded area for

3

about an hour and a half. Graves testified that the area had "thick wooded vegetation" with a lot of "low-lying water . . . anywhere from your ankles to your knees." Officers found one of the assailants and arrested him. Graves and his dog joined the search after other dogs became tired. Graves found appellant lying on his back under a bunch of vegetation that was really thick, including berry vines, leaves, and things like that. Appellant was arrested.

Deputy Jeffrey Vadzemnieks testified that he spoke with one of the complainants soon after being dispatched to the home. That complainant described two of the suspects as being between five-foot-six and five-foot-ten. Vadzemnieks estimated appellant's height to be between five-foot-four and five-foot-six. Vadzemnieks also testified that appellant had lived about twenty to twenty-five minutes away at the time of the robbery.

Rebecca Mikulasovich testified that she was a DNA analyst at the Harris County Institute of Forensic Sciences. She tested twenty-six items submitted to her, which included four black ski masks and seven black gloves. Appellant could not be excluded as a contributor to DNA on one of the ski masks and one of the gloves. Both of the items had DNA mixtures. The frequency of occurrence of an unrelated, randomly selected individual who could be a contributor to the DNA mixtures on the glove and ski mask were, respectively, one in 25 trillion African Americans and one in 75 sextillion, 250 quintillion African Americans. She testified, over appellant's objection, about the various other items recovered from the scene for which appellant's codefendants could not be excluded as contributors.[1]

---

[1] The codefendants were named Corbik Reece, Chase Akilleon, and Caylon Johnson.

## C.    Analysis

Appellant contends the evidence is insufficient to identify him as one of the robbers because (1) the complainants did not identify appellant as one of the robbers; (2) appellant's height did not match the complainant's description; (3) appellant was found alone and not until an hour and a half after the robbery; and (4) the DNA evidence was a mixture.

The lack of an eyewitness identification is not dispositive, especially because it is undisputed that all four robbers wore masks. *See, e.g.*, *Louis v. State*, 159 S.W.3d 236, 247–48 (Tex. App.—Beaumont 2005, pet. ref'd) (legally sufficient evidence of the defendant's identity as one of several masked robbers even though none of the witnesses to the robbery could identify the defendant); *Green v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("Identity of a perpetrator can be proved by direct or circumstantial evidence; eyewitness identification is not necessary."). Further, we note that Vadzemnieks's estimate of appellant's height is within the range provided by the complainant: five-foot-six. Contrary to appellant's assertion, the record contains evidence that appellant's height matched the complainant's description.[2]

Appellant takes a "divide-and-conquer" approach to the evidence of his identity. But instead, we must look at the combined and cumulative force of all the evidence. *See Merritt*, 368 S.W.3d at 526. Importantly, Gustafson saw two men run toward the wooded area, and two men were found in the wooded area, including appellant. Appellant was found under suspicious circumstances—far from his home, lying on his back, covered with vegetation, within the perimeter

---

[2] Even if there were an inconsistency, the evidence would not be rendered insufficient. *See Cooks v. State*, 844 S.W.2d 697, 708 (Tex. Crim. App. 1992) ("The fact that the record contains some inconsistencies in the descriptions given of appellant does not render the evidence insufficient to support a conviction.").

established by police. And neither of the men found in the wooded area could be excluded as contributors to DNA mixtures found on items used during the robbery.

The evidence in this case is similar to *Louis v. State*, where the Beaumont Court of Appeals affirmed the conviction of a masked robber who fled from and eluded a police officer, only later to be discovered hiding with a codefendant in a "sticker bush" after the officers set up a perimeter in the area. *See* 159 S.W.3d at 247–48. None of the witnesses to the robbery, nor the police officer who chased the suspect initially, could identify appellant as one of the robbers. *See id.* at 240–42, 244. Although in *Louis* some fruits of the crime (cash and a wallet) were located in the bush near the defendant and his codefendant, the police never recovered any of the instrumentalities of the crime—masks, gloves, weapons, or blue jumpsuits worn by the robbers. *See id.* at 243–45. Here, officers recovered instrumentalities of the crime containing DNA for which appellant could not be excluded. This evidence is indicative of appellant's guilt. *See, e.g.*, *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (DNA evidence on a cigarette butt found at the crime scene indicated the defendant was present during the murder); *see also Oliver v. State*, No. 14-09-00690-CR, 2010 WL 3307391, at *2 (Tex. App.—Houston [14th Dist.] Aug. 24, 2010, no pet.) (mem. op., not designated for publication) (affirming robbery conviction although neither witness could identify the defendant as a robber; "DNA evidence is admissible to prove identity and here, appellant's DNA was found on the mask recovered at the scene").

We disagree with appellant's suggestion that the DNA mixture renders the evidence legally insufficient because "it was just as likely that the other contributor used the ski mask for the home invasion." This may have been one reasonable inference available to the jury, but the jury rejected it. The State was not required to exclude all other reasonable hypotheses of guilt. *See, e.g.*, *Sonnier v. State*, 913

S.W.2d 511, 516 (Tex. Crim. App. 1995). We must defer to the jury's resolution of conflicting inferences. Similarly, the one-and-a-half-hour lapse of time before appellant's discovery is not dispositive. Multiple officers testified that a perimeter had been set up around the wooded area, and Graves testified that the area was being searched during the time period by K-9 officers and dogs.

Considering the totality of the circumstantial evidence and inferences therefrom in the light most favorable to the jury's verdict, we hold that the evidence is legally sufficient to prove appellant's identity as one of the robbers.

Appellant's first issue is overruled.

## II. ADMISSION OF DNA EVIDENCE

In his second issue, appellant contends the trial court erred by admitting evidence that appellant's codefendants could not be excluded as contributors to DNA found on multiple instrumentalities of the robbery, such as gloves and ski masks. Appellant contends the evidence was irrelevant under Rule 401 of the Texas Rules of Evidence and unfairly prejudicial under Rule 403.

### A. Standard of Review

We review a trial court's ruling to admit evidence under an abuse-of-discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We must affirm if the trial court's ruling falls within the zone of reasonable disagreement. *Id.*

### B. Rule 401: Relevancy

Appellant contends the evidence was not relevant "because the co-defendants [sic] presence at the crime scene would not aid the jury in determining whether or not Appellant participated in the home invasion."

"Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing Tex. R. Evid. 402). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401 (1998, amended 2015). This definition is "necessarily a broad one." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Even "marginally probative" evidence should be admitted if "it has any tendency at all, even potentially, to make a fact of consequence more or less likely." *Fuller v. State*, 829 S.W.2d 191, 198 (Tex. Crim. App. 1992).

The State presented evidence that multiple suspects participated in the robbery, and the jury charge authorized appellant's conviction based on the law of parties.[3] Thus, a fact of consequence was whether appellant aided those codefendants in the commission of the robbery. Evidence linking the named codefendants to instrumentalities of the robbery—codefendants found in the same general area as appellant and linked to similar instrumentalities—would have a tendency to prove that appellant aided the codefendants in the commission of the robbery. *Cf. Rivera v. State*, 89 S.W.3d 55, 60 (Tex. Crim. App. 2002) (holding

---

[3] The jury charges state in pertinent part:

. . . . if you find from the evidence beyond a reasonable doubt that on or about the 28th day of February, 2012, in Harris County, Texas, Corbik Reece and/or Akilleon Chace and/or Caylon Johnson, did then and there unlawfully, while in the course of committing theft of property owned by [the complainant], and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place [the complainant] in fear of imminent bodily injury or death, and Corbik Reece and/or Akilleon Chase and/or Caylon Johnson did then and there use or exhibit a deadly weapon, namely, a firearm, and the defendant, Glen Dale Carter, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Corbik Reece and/or Akilleon Chase and/or Caylon Johnson to commit the offense, if he did, then you will find the defendant guilty of aggravated robbery, as charged in the indictment.

that the appellant did not show a reasonable probability that DNA tests on samples taken from the victim would prove the appellant innocent of capital murder predicated on aggravated sexual assault partly because "DNA tying [the codefendant] to a sexual assault of the victim would be consistent with appellant's guilt under the law of parties, and the jury was instructed on the law of parties at his trial").

The trial court did not abuse its discretion by admitting evidence that the codefendants could not be excluded as contributors to DNA found on instrumentalities of the robbery.

## C.    Rule 403: Unfair Prejudice

The State contends that appellant did not preserve error regarding Rule 403. We agree.  Appellant did not refer to Rule 403 or any language contained therein that would have informed the trial court that the basis for his objection to admission of the DNA evidence was Rule 403.  *See* Tex. R. App. 33.1(a)(1); *see also, e.g.*, *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (noting that the complaining party must let the trial judge know what the party wants, why the party is entitled to it, and do so clearly enough for the judge to understand the complaint); *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("A rule 403 objection is not implicitly contained in relevancy or 404(b) objections; rather, a specific rule 403 objection must be raised to preserve error.").

Appellant's second issue is overruled.

## III. CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.


/s/    Sharon McCally
       Justice


Panel consists of Justices Jamison, McCally, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).